HERBERT SMITH FREEHILLS
  NEW YORK LLP
        Peter J. Behmke
        Michael P. Jones
        Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel:  (917) 542-7600
Fax:  (917) 542-7601
Email:   Peter.Behmke@hsf.com
         Michael.Jones@hsf.com
         Barron.Flood@hsf.com

*Attorneys for Glencore Singapore Pte Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERIFOS MARITIME CORPORATION and ANDROS MARITIME AGENCIES LTD, <br><br> Plaintiffs, <br><br> vs. <br><br> GLENCORE SINGAPORE PTE LTD., <br><br> Defendant | Case No. 1:22-cv-08012 (LGS) |

**GLENCORE SINGAPORE PTE LTD.'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS AMENDED VERIFIED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 3

I.     The Parties ................................................................................................ 3

II.    Negotiation of the Sale Contract ............................................................. 3

III.   GSPL's General Terms and Conditions ................................................... 4

IV.    Delivery and Testing of the Marine Fuel ................................................ 5

V.     Serifos Consumes a Portion of the Marine Fuel Without
       Damage, and GSPL Removes and Replaces the Remainder ................... 6

VI.    Allegations Concerning GSPL's Knowledge and Intent .......................... 7

VII.   The Causes of Action and Claimed Damages .......................................... 10

LEGAL STANDARD ............................................................................................... 11

ARGUMENT ............................................................................................................ 11

I.     The Breach of Contract Claim (Count I) Should Be Dismissed .............. 11

       A.    The Sole Remedy Provision Bars Plaintiffs' Claim ..................... 11

       B.    The Limitation of Liability Bars Plaintiffs' Claims..................... 13

       C.    At a Minimum, Count I Should Be Dismissed to the Extent
             It Seeks Damages In Excess of the $300,000 Liability Cap ....... 14

II.    The Tort Claims for Negligence (Count II) and Strict
       Liability (Counts III–IV) Are Barred by the Economic Loss Rule.......... 14

III.   The Fraud Claim (Count V) Should Be Dismissed................................... 16

       A.    The Fraud Claim Is Barred by the Economic Loss Rule ............. 16

       B.    The Pleaded Facts Fail to Establish Any Intent to Defraud........ 17

IV.    The Gross Negligence Claim (Count VI) Should Be Dismissed .............. 19

A.     The Economic Loss Rule Bars the Gross Negligence Claim ..................... 19

B.     Plaintiffs Do Not Plead Facts to Meet
the High Standard for Gross Negligence .................................................... 20

CONCLUSION ..................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADMIntermare v. Kamca Trading S.A.*,
  2022 U.S. Dist. LEXIS 51442 (S.D.N.Y. Mar. 22, 2022) ....................................................... 17

*AGIP Petrol. Co. v. Gulf Island Fabrication, Inc.*,
  920 F. Supp. 1330 (S.D. Tex. 1996) ........................................................................................ 19

*Am. Dredging Co. v. Plaza Petrol. Inc.*,
  845 F. Supp. 91 (E.D.N.Y. 1993) ............................................................................................ 15

*Am. Petrol. and Transp., Inc. v. City of New York*,
  737 F.3d 185 (2d Cir. 2013) .................................................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 11

*Beauvoir v. Israel*,
  794 F.3d 244 (2d Cir. 2015) ...................................................................................................... 3

*Becker v. Poling Transp. Corp.*,
  356 F.3d 381 (2d Cir. 2004) .................................................................................................... 21

*Bocre Leasing Corp. v. GMC*,
  84 N.Y.2d 685 (1994) ....................................................................................................... 14, 15

*Centurion Bulk Pte Ltd. v. NuStar Energy Servs.*,
  2020 U.S. Dist. LEXIS 249059 (S.D. Tex. March 24, 2020) ................................................. 16

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ............................................................................................... 17, 18

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
  70 N.Y.2d 382 (1987) .............................................................................................................. 20

*Coastal Iron Works, Inc. v. Petty Ray Geophysical*,
  783 F.2d 577 (5th Cir. 1986) .................................................................................................. 20

*Curacao Oil NV v. Trafigura Pte Ltd.*,
  2020 N.Y. Misc. LEXIS 2902 (Sup. Ct. N.Y. Cty. Feb. 3, 2020) ................................. 8, 16, 19

*D'Amico v. Waste Mgmt. of N.Y., LLC*,
  2019 U.S. Dist. LEXIS 50323 (W.D.N.Y. Mar. 25, 2019) ...................................................... 21

*Del Cibao v. 3 Kids Corp.*,
  2021 U.S. Dist. LEXIS 193506 (S.D.N.Y. Oct. 6, 2021) ..................................................... 17

*Deutsche Lufthansa AG v. Boeing Co.*,
  2007 U.S. Dist. LEXIS 9519 (S.D.N.Y. Feb. 2, 2007) ................................... 20, 21, 22, 23, 24

*Dolan v. Fairbanks Cap. Corp.*,
  930 F. Supp. 2d 396 (E.D.N.Y. 2013) ................................................................................ 16

*Duchimaza v. Niagara Bottling, LLC*,
  2022 U.S. Dist. LEXIS 139837 (S.D.N.Y. Aug. 5, 2022) ..................................................... 18

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2008) ................................................................................ 14

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
  476 U.S. 858 (1986) ........................................................................................ 14, 15, 19, 20

*Great Lakes Reins. (UK) PLC v. Sunset Harbour Marina, Inc.*,
  2011 U.S. Dist. LEXIS 165775 (S.D. Fla. July 1, 2011) .................................................. 20, 21

*Hoffman v. Kashi Sales, L.L.C.*,
  2022 U.S. Dist. LEXIS 229070 (S.D.N.Y. Dec. 20, 2022) ................................................... 18

*Houston Exploration Co. v. Halliburton Energy Servs.*,
  269 F.3d 528 (5th Cir. 2001) ............................................................................................ 21

*Howe v. Ethicon, Inc.*,
  2022 U.S. Dist. LEXIS 117292 (S.D.N.Y. June 27, 2022) ................................................... 23

*Indus. Risk Ins. v. Port Auth. of N.Y. & N.J.*,
  387 F. Supp. 2d 299 (S.D.N.Y. 2005) ................................................................................ 13

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*,
  38 F.3d 1279 (2d Cir. 1994) ............................................................................................. 20

*Matana v. Merkin*,
  2014 U.S. Dist. LEXIS 13747 (S.D.N.Y. Feb. 4, 2014) ....................................................... 18

*Matter of Part 60 Put-Back Litig.*,
  36 N.Y.3d 342 (2020) ...................................................................................................... 12

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
  84 N.Y.2d 430 (1994) ...................................................................................................... 13

*Mindspirit v. Evalueserve Ltd.*,
  2016 U.S. Dist. LEXIS 202616 (S.D.N.Y. Sept. 24, 2016) ................................................. 20

*My Buddy Davis, LLC v. Starboard Yacht Grp., LLC,*
  2022 U.S. Dist. LEXIS 107606 (S.D. Fla. June 16, 2022) ................................................. 16, 17

*Net2Globe Int'l v. Time Warner Telecom of N.Y.,*
  273 F. Supp. 2d 436 (S.D.N.Y. 2003) ............................................................................ 13

*Omegra Shipping PTE Ltd. v. World Fuel Servs. (Sing.) PTE Ltd.,*
  2022 U.S. Dist. LEXIS 147343 (S.D. Fla. Aug. 17, 2022) .................................. 16, 19, 23, 24

*Rothschild v. General Motors LLC,*
  2020 U.S. Dist. LEXIS 187300 (E.D.N.Y. Sept. 30, 2020) .................................................. 13

*Rotterdam Ventures v. Ernst & Young LLP,*
  300 A.D. 2d 963 (3d Dep't 2002) ................................................................................. 18, 23

*S. Cherry St., LLC v. Hennessee Grp., LLC,*
  573 F.3d 98 (2d Cir. 2009) ............................................................................................ 18

*Sing. Airlines, Ltd. v. Gen. Elec. Co.,*
  2019 N.Y. Misc. LEXIS 6965 (Sup. Ct. N.Y. Cty. Dec. 30, 2019) ....................................... 15

*Solomon v. Canon USA, Inc.,*
  31 Misc.3d 30 (1st Dep't 2010) ..................................................................................... 12

*St. Clair Marine Salvage, Inc. v. M/Y Blue Marlin, MC No. 5937 RL,*
  2014 U.S. Dist. LEXIS 75164 (E.D. Mich. June 3, 2014) .................................................. 17

*Stadnick v. Vivint Solar, Inc.,*
  861 F.3d 31 (2d Cir. 2017) ............................................................................................ 11

*Sutton Park Dev. Corp. Trading Co., Inc. v. Guerin & Guerin Agency Inc.,*
  297 A.D.2d 430 (3d Dep't 2002) ................................................................................. 21, 22

*Thypin Steel Co. v. Certain Bills of Lading,*
  1998 U.S. Dist. LEXIS 20212 (S.D.N.Y. Dec. 30, 1998) .................................................. 17

*VL8 Pool, Inc. v. Glencore Ltd.,*
  2021 U.S. Dist. LEXIS 56968 (S.D.N.Y. Mar. 25, 2021) ............................................ 8, 11, 14

*VL8 Pool, Inc. v. Glencore Ltd.,*
  2021 U.S. Dist. LEXIS 245803 (S.D.N.Y. Dec. 27, 2021) .................................................. 22

*Xerox Corp. v. JCTB Inc.,*
  787 Fed. Appx. 43 (2d Cir. 2019) .................................................................................. 12

**Statutes**

U.C.C. § 2-714 ................................................................................................................. 13

U.C.C. § 2-719 .................................................................................................... 11, 12, 14

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................... 17

Glencore Singapore Pte Ltd. ("GSPL") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Verified Complaint (ECF No. 17, the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

GSPL is a Singapore-based supplier of petroleum and petroleum products, including supplying fuel to ocean-going vessels and other intermediate suppliers in the marine industry. This case concerns the sale of fuel oil to Serifos Maritime Corporation ("Serifos"), owner of the vessel *M/T Serifos*, that allegedly did not meet specifications because it purportedly contained 0.45% (by mass) organic chlorides. Plaintiffs claim that the organic chloride content breached quality standards in the sale contract that required the fuel product to be suitable for use by marine diesel engines, such as the ISO 8217 and MARPOL Annex VI standards.

Under the sale contract, plaintiffs agreed that the "ONLY" remedy available to plaintiffs for "off-specification supply" was removal and replacement of the marine fuel. The contract further allocated the risk of potential losses due to the marine fuel being off-specification to plaintiffs as buyers, a common practice in the industry that allowed plaintiffs to purchase the marine fuel at an economical price. Those agreements require dismissal of this case.

Plaintiffs admit that Serifos consumed a portion of the marine fuel (with full knowledge of the organic chloride content), and GSPL replaced the remainder at its own cost and expense. Plaintiffs are therefore not entitled to any further compensation or relief. They have nonetheless filed this lawsuit in an apparent attempt to avoid their contractual bargain by improperly repackaging their contract claim as torts. For the reasons set forth below, the Amended Complaint fails as a matter of law and should be dismissed in its entirety.

*First*, the contract claim (Count I) is barred by the sole replacement remedy in the contract, which was fulfilled by GSPL, as well as the limitation of liability.  Plaintiffs are not entitled to further compensatory damages and the claim should be dismissed.

*Second*, the claims for negligence and strict liability (Counts II–IV) are barred by the economic loss rule.  They are premised on the same substantive allegations as the contract claim—*i.e.*, that the fuel oil contained organic chlorides that rendered it unfit for use by a marine diesel engine—and plaintiffs are not seeking losses caused by physical damage to other property.  Courts routinely apply the economic loss rule to dismiss identical tort claims based on the sale of allegedly contaminated marine fuel where no physical injury is pleaded.

*Third*, the fraud claim (Count V) is based on the allegation that the quality terms in the contract were "intentional misrepresentations."  It is wholly duplicative of the contract claim and should also be dismissed under the economic loss rule.  Plaintiffs further offer no pleaded facts or even a theory that suggests GSPL had a motive or intent to defraud plaintiffs.  Either reason requires dismissal of this claim.

*Finally*, the claim for gross negligence (Count VI) also mirrors the contract claim, and should be dismissed.  Plaintiffs candidly acknowledge that this claim is included to avoid the limitation of liability to which they agreed with GSPL.  Putting aside that the sole remedy clause is not subject to invalidation on this ground, the pleaded facts do not remotely establish the type of malicious, bad faith or intentional conduct required for gross negligence.  Courts in this Circuit do not hesitate to dismiss such claims at the pleading stage.

The Amended Complaint should therefore be dismissed with prejudice.

## FACTUAL BACKGROUND

### I.     The Parties

GSPL is a Singapore company, and a supplier of fuel products to the marine industry in Singapore.  GSPL buys and sells thousands of metric tons (mt) of fuel products to vessels and intermediate suppliers, every day.  *See* Am. Compl. ¶¶ 5, 57.

Serifos was the owner of the vessel *M/T Serifos*, a crude oil carrier, and the user of the marine fuel purchased from GSPL that is the subject of this action.  *Id.* ¶ 2.  Andros Maritime Agencies Ltd. ("Andros") was the London agent for the technical and commercial manager of the vessel and GSPL's counterparty under the sale contract for the fuel.  *Id.* ¶ 4.  The Amended Complaint does not contain any substantive allegations involving Andros, or plead that Andros incurred any loss.

### II.    Negotiation of the Sale Contract

In March 2022, Andros, on behalf of Serifos, used the services of a broker, Socomet Bunkering ("Socomet"), to order 4,110 mt of marine fuel from GSPL, to be supplied to the vessel in Singapore.  Am. Compl. ¶¶ 11–12.  On March 10, 2022, Socomet issued a "Bunker Confirmation Note" to GSPL with proposed terms for the transaction.  *Id.* ¶ 12; Ex. A.[1]

The Bunker Confirmation Note requested fuel oil meeting specifications for 3.5% maximum sulfur RMG 380 fuel oil under the ISO 8217 and MARPOL Annex VI standards.  Am. Compl. ¶ 12; Ex. A.  ISO 8217 is a specification for fuel oil that is often incorporated into sale contracts as a quality term for marine fuel.  Clause 5 of ISO 8217 contains "general requirements," including that:  "The fuel shall be free from any material at a concentration that causes the fuel to

---

[1]     "Ex. __" refers to exhibits to the Declaration of Peter J. Behmke, submitted herewith.  The Court may consider these documents because they are referenced and relied upon in the Amended Complaint.  *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015).

be unacceptable for use" in marine diesel engines, *i.e.*, "material not at a concentration that is harmful to personnel, jeopardizes the safety of the ship, or adversely affects the performance of the machinery."  Am. Compl. ¶ 15; Ex. D § 5.2.  Clause 6.6 provides that "[t]he fuel shall be free of inorganic acids."  Ex. D § 6.6.  MARPOL refers to the International Convention for the Prevention of Pollution from Ships.  Regulation 18 of Annex VI includes substantially the same requirements as Clauses 5 and 6.6 of ISO 8217.  *Compare* Ex. D at § 5.2 *with* Ex. E at § 3.1.

The Bunker Confirmation Note further advised GSPL that "THE OWNERS [Serifos] HAVE ENTERED INTO A CONTRACT WITH A RECOGNISED FUEL TESTING AGENCY TO CONFIRM THE QUALITY . . . OF FUELS DELIVERED TO THE VESSEL" and that the Chief Engineer of the vessel was only authorized to certify receipt of the fuel oil "FOR VOLUME ONLY, QUALITY . . . SUBJECT TO ANALYSIS."  Ex. A.

On March 10, 2022, GSPL agreed to the requested terms of the fuel sale, including that the transaction would be governed by GSPL's General Terms and Conditions for the Sale of Marine Fuels ("GTCs").  *See* Am. Compl. ¶ 12.

## III.   GSPL's General Terms and Conditions

The risks and potential consequences of foreign chemicals being present, undetected, in the supply chain for marine fuel are well known in the industry.  *See*, *e.g.*, Am. Compl. ¶ 16.  As explained in Annex B of the ISO 8217 standard, "[i]dentifying and determining the concentration of a material that causes the fuel to be unacceptable for use can be difficult" for numerous technical and logistical reasons, including (for example) that "a wide range of materials from different sources can enter the marine supply chain" and "various analytical techniques are used to detect specific chemical species with no standardized approach."  Ex. D, Annex B.  Annex B therefore recognizes that "[i]t is therefore not practical to require detailed chemical analysis for each delivery of fuels . . . ."  *Id.*

4

Instead, it is industry standard for parties to contractually allocate the risks of potential contamination between seller and buyer, to allow the buyer to purchase the fuel at an economical price.  Were it otherwise, fuel sellers would in effect become insurers against all supply chain contamination risks, and would be required to charge substantially higher prices to absorb those risks and costs.

Section 7(d) of the GTCs agreed by the parties is a standard provision that, for marine fuel that fails to meet quality requirements, the buyer's exclusive remedy is removal and replacement of the fuel at the seller's expense.  *See* Ex. B (GTCs) § 7(d) (for "off-specification or suspected off-specification supply . . . Seller will be responsible ONLY for direct expenses incurred for removal and replacement of Marine Fuels").

Section 7(a) further expressly allocates to the buyer all costs and liabilities for consequential damages arising out of the supply of off-specification marine fuel, including costs of deviation, commercial losses or damage to the vessel's engine.  Section 7(a) provides:

> Seller's obligations or liabilities hereunder *shall not include any consequential or indirect damages*, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery Vessels or to their engines or tanks, and any actual or prospective loss of profits.

*Id.* § 7(a).  Section 7(a) further includes an overarching cap on GSPL's liability of $300,000.  *Id.* ("Seller's maximum liability under this Contract shall not exceed the . . . the sum of USD Three Hundred Thousand (US$300,000.00).").

The GTCs and the sale contract are governed by New York law and, where applicable, U.S. maritime law.  *Id.* § 15(a).

## IV.   **Delivery and Testing of the Marine Fuel**

On March 11, 2022, GSPL delivered the marine fuel to the vessel.  Ex. C.  Consistent with the term in the Bunker Confirmation Note that Serifos would test and confirm the quality of the

product, Serifos sent a sample "to be tested to establish that the bunkers satisfied the general parameters of the ISO 8217:2017 specifications."  Am. Compl. ¶ 13.

Plaintiffs allege that, on March 20, 2022, Serifos received the results from those tests showing that the marine fuel allegedly contained "elevated levels of chloro-contaminates" or "organic chlorides."  *Id.* ¶ 18.  Plaintiffs also allege that "further analysis was performed" by "a certified laboratory experienced in the testing of bunker fuel" that allegedly established the fuel was "in fact, contaminated with 12 different organic chlorides at a total concentration of 4,450 mg/kg (0,45% mass.)."  *Id.* ¶¶ 19–20.

According to plaintiffs, "[b]unker fuels containing organic chlorides are considered off specification against ISO 8217:2017 and MARPOL Annex VI"—*i.e.*, the quality terms incorporated into the sale contract.  *Id.* ¶ 23.

## V.  Serifos Consumes a Portion of the Marine Fuel Without Damage, and GSPL Removes and Replaces the Remainder

The Amended Complaint is replete with heated rhetoric concerning the presence of organic chlorides in marine fuel.  *See, e.g.*, Am. Compl. ¶ 24 ("potential life-threatening hazards"); *id.* ¶ 25 ("dangerously high levels of organic chlorides"); *id.* ¶ 36 ("unsafe, defective, and dangerous"). However, plaintiffs admit that, after receiving the test results and knowing the exact types and concentrations of organic chlorides allegedly present in the GSPL fuel, Serifos authorized the vessel to begin consuming the fuel.  *Id.* ¶ 26.

According to plaintiffs, the vessel "encountered significant main and auxiliary engine issues requiring extraordinary effort from the ship's crew to avoid catastrophe."  *Id.*  The Amended Complaint does not identify any alleged damage to the vessel or its engines, or any monetary loss associated with the crew's "extraordinary effort."  *Id.*

The vessel thereafter diverted to Pointe Noire and Port Louis to load additional marine fuel that it could consume while completing its voyage to Gabon to load cargo, and from Gabon to India to discharge. *Id.*

Plaintiffs admit that the vessel then returned to Singapore, where (consistent with the exclusive replacement remedy in the GTCs) GSPL removed and replaced the remaining marine fuel originally supplied by GSPL, allegedly less 62.14 mt, at GSPL's cost and expense. *Id.* Plaintiffs do not allege that the 62.14 mt were not loaded due to the fault of GSPL, as opposed to the vessel reaching its storage capacity or some other reason. In any event, it is undisputed that 98.5% of the GSPL fuel was used by Serifos or replaced by GSPL.

The Amended Complaint alleges, in conclusory fashion, "[h]ad Plaintiffs not taken these actions, serious additional damage to the Vessel and its equipment would have been sustained." *Id.* Plaintiffs do not identify any damage to the vessel, or any action taken by Serifos other than ceasing use of the GSPL fuel, purchasing additional fuel to fulfill its commercial obligations, and returning to Singapore for GSPL to replace the fuel.

## VI.   Allegations Concerning GSPL's Knowledge and Intent

The Amended Complaint cites to lawsuits involving non-party Glencore Ltd., concerning transactions in Houston and Panama in 2018, apparently to demonstrate that GSPL and the industry generally are aware that foreign substances in marine fuel can cause engine problems. Am. Compl. ¶¶ 16–17. Plaintiffs do not (and could not) assert that the events in Houston and Panama in 2018 are causally or otherwise related to the alleged presence of organic chlorides in the fuel sold to plaintiffs in Singapore in 2022. To the contrary, plaintiffs plead the alleged organic chloride issue first began in "February, 2022." *Id.* ¶ 25.

The cited lawsuits concerned an industry-wide event in 2018 known as the "Houston problem," in which fuel components containing biofuels or other non-petroleum material entered

the supply chain for marine fuel in Houston, impacting numerous downstream suppliers (such as Glencore Ltd.) and vessels in Houston and Panama. *See* Am. Compl. ¶ 16.[2] For example, *VL8 Pool, Inc. v. Glencore Ltd.*, 2021 U.S. Dist. LEXIS 56968 (S.D.N.Y. Mar. 25, 2021), involved marine fuel allegedly purchased by Glencore Ltd. from Valero Marketing and Supply Company ("Valero") in Houston and resold to a vessel in Panama. *Id.* at *2–3. The Valero fuel allegedly contained fatty acids, but their presence went undetected until they caused engine problems in the vessel. *Id.* at *1–2. The remaining cases similarly involved fuel sourced from other suppliers and resold by Glencore Ltd. in Houston or Panama from March to July 2018 that allegedly contained fatty acids or other substances that are not at issue here. *See* Am. Compl. ¶ 20.[3]

GSPL operates in Singapore and was not involved in those cases. Those matters concerned fuel products purchased by a different company from different sources in Houston and Latin America over a five month period in 2018, and different alleged causes and types of contamination. Nothing about those events would have indicated that GSPL knew or should have known the parcel

---

[2]    *See*, *e.g.*, *Curacao Oil NV v. Trafigura Pte Ltd.*, 2020 N.Y. Misc. LEXIS 2902, at *7–8 (Sup. Ct. N.Y. Cty. Feb. 3, 2020) (describing the "Houston problem"), *aff'd*, 189 A.D.3d 404 (1st Dep't 2020).

[3]    Complaint at ¶ 7, *KPI Bridge Oil, Inc. v. Glencore Ltd.*, No. 1:19-cv-02772-ER (S.D.N.Y. Mar. 28, 2019), ECF No. 1 (March 2018, Houston); Amended Complaint at ¶ 8, *ADMIntermare v. Kamca Trading S.A., et al.*, No. 20-cv-1223 (S.D.N.Y. Sept. 4, 2019), ECF No. 10 (June 2018, Panama); Amended Complaint at ¶ 24, *VL8 Pool, Inc. v. Glencore Ltd.*, No. 1:20-cv-2053-ALC (S.D.N.Y. Apr. 8, 2021), ECF No. 21 (March 2018, Houston); Third Party Complaint at ¶¶ 6, 12, *Centurion Bulk Pte Ltd v. NuStar Energy Services, Inc.*, No. 4:19-cv-0931 (S.D. Tex. Apr. 25, 2019), ECF No. 5 (March 2018, Houston); Complaint at ¶ 15, *Glencore Ltd. v. Maersk Oil Trading Panama S.A and Maersk Line A/S*, Index No. 655121/2019 (N.Y. Sup. Ct. N.Y. Cty. Sept. 6, 2019), NYSCEF Doc. No. 2 (February 2018, Panama); Complaint at ¶ 18, *Kamca Trading S.A. and Sturzenegger & Co. LLC v. Glencore Ltd.*, Index No. 651089/2022 (Sup. Ct., N.Y. Cty. Mar. 8, 2022), NYSCEF Doc. No. 2 (March 2018, Panama); Complaint at ¶ 17, *Kamca Trading S.A. and Sturzenegger & Co. LLC v. Glencore Ltd.*, Index. No. 651279/2022 (Sup. Ct. N.Y. Cty. Mar. 18, 2022), NYSCEF Doc. No. 2 (March 2018, Panama); Complaint at ¶ 18, *Kamca Trading S.A. and Sturzenegger & Co. LLC v. Glencore Ltd.*, Index. No. 651840/2022 (Sup. Ct. N.Y. Cty. Apr. 13, 2022), NYSCEF Doc. No. 2 (April to July 2018, Panama); Complaint at ¶ 17, *Kamca Trading S.A. and Sturzenegger & Co. LLC v. Glencore Ltd.*, Index. No. 651993/2022 (Sup. Ct. N.Y. Cty. Apr. 28, 2022), NYSCEF Doc. No. 2 (May 2018, Panama).

of fuel oil sold to plaintiffs four years later and nearly 10,000 miles away in Singapore potentially contained organic chlorides, and plaintiffs do not contend otherwise.

The only factual allegations related to fuel products sold by GSPL in Singapore in February or March 2022 concern alleged "indicators" of potential organic chlorides in fuel sold to other customers.  *Id.* ¶ 24.  For example, plaintiffs plead that GSPL was "aware from the vessels it stemmed earlier" that parcels supplied to those other vessels were potentially off-specification, citing to "[n]umerous bunker fuel testing laboratories [that] issued advisory notices about the presence of dangerously high levels of organic chlorides in the fuel [GSPL] was providing."  *Id.* ¶ 25.  According to the advisory cited by plaintiffs, Viswa Laboratories "identified 3 bunkers supplied in Singapore that had high levels of organic chlorides" and "[t]he 3 supplies were made by 2 different suppliers."  *Id.*; Ex. G.  The article does not mention GSPL, identify the customers, or contain any information that would have caused GSPL to believe the article concerned its marine fuel (if it did).

The only other pleaded indicator of a potential issue also related to fuel parcels sold to other customers, and only indirectly suggested the presence of organic chlorides.  Plaintiffs allege, on information and belief, that "reports of significant sediment problems being encountered" by other vessels "presag[ed] . . . that contamination was likely."  Am. Compl. ¶ 25.  Plaintiffs assert the customer complaints or sediment issue should have prompted "further testing" that "would result in [GSPL] discovering the presence of . . . organic chlorides."  *Id.* ¶ 66.

Plaintiffs do not plead any facts concerning GSPL's quality assurance protocols, including what tests were performed on the marine fuel sold to plaintiffs, or how those protocols and tests compare to industry standards.  There are also no pleaded facts that suggest GSPL had actual

knowledge of alleged organic chlorides in the parcel sold to plaintiffs, that GSPL had any motive or intent to defraud plaintiffs, or that GSPL acted in bad faith.

## VII.   **The Causes of Action and Claimed Damages**

The Amended Complaint alleges six causes of action.

Count I, for breach of contract, alleges that the fuel oil failed to meet the "requirements of the contract including those specifications required for marine bunker fuel under MARPOL Annex VI and ISO 8217:2017." *Id.* ¶ 31.  As stated above, those contractual standards allegedly included the requirement that the fuel be "free from any material at a concentration that causes the fuel to be unacceptable for use" in marine diesel engines. *Id.* ¶ 15; *see also* Ex. D § 5.2.

The remaining counts assert the same contract claim, repackaged as torts.

Counts II–IV assert claims for negligence and strict liability, premised on the theory that GSPL did not exercise reasonable care in the supply, design or "failure to warn" of marine fuel that was "defective" or unfit for use by the vessel's engines. *See*, *e.g.*, *id.* ¶¶ 37, 43, 49.

Count V, for fraud, asserts that the quality specifications in the contract were "intentional misrepresentations." *Id.* ¶ 52, 62.  Plaintiffs do not identify any GSPL statements outside of the contractual documents, or plead that GSPL had a motive or intent to defraud.

Count VI likewise restates the contract claim as gross negligence, premised on an alleged breach of a "duty to provide fuel which was not defective or harmful to the Vessel's machinery." *Id.* ¶ 64.  The Amended Complaint does not plead facts that suggest GSPL acted in bad faith, out of malice or an intent to harm plaintiffs, or any facts to distinguish this claim from the contract, negligence or strict liability claims.

Finally, the Amended Complaint makes no distinction between damages sought for the contract versus tort claims.  It also does not identify or seek damages resulting from physical damage to the vessel or its equipment, such as repair costs.  That is not a technical pleading

deficiency.  In its letter to this Court dated November 23, 2022, Serifos represented that all of its losses are economic, comprised of "Additional bunkers consumed / deviation / detention," "Agency Costs," "Sampling costs," and "Shortages at Singapore."  ECF No. 8 at 4.

## LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but gives "no effect to legal conclusions couched as factual allegations."  *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citations omitted).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

### I.  The Breach of Contract Claim (Count I) Should Be Dismissed

Plaintiffs' claim for breach of contract should be dismissed because plaintiffs' claimed damages are barred by the GTCs.  *See VL8 Pool, Inc. v. Glencore Ltd.*, 2021 U.S. Dist. LEXIS 56968, at *10 (S.D.N.Y. Mar. 25, 2021) ("*VL8 Pool I*") (dismissing contract claim based on allegedly defective marine fuel for failure to plead damages not barred by contract).

### A.  The Sole Remedy Provision Bars Plaintiffs' Claim

Plaintiffs' claim for compensatory damages is barred by the exclusive replacement remedy provision in section 7(d) of the GTCs.  *See* Ex. B (GTCs) § 7(d) (for "off-specification or suspected off-specification supply . . . Seller will be responsible ONLY for direct expenses incurred for removal and replacement of Marine Fuels").

Under New York law, a contractual provision that modifies the buyer's remedies to "ONLY" replacement of non-conforming goods is enforceable, and precludes any claim for compensatory damages.  *See* U.C.C. § 2-719(1)(a) ("the agreement may provide for remedies . . .

11

in substitution for those provided in this Article . . . as by limiting the buyer's remedies to . . .

replacement of non-conforming goods"); *see also Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d

342, 351–52 (2020) ("[c]ontract terms providing for a sole remedy are sufficiently clear to

establish that no other remedy was contemplated by the parties at the time the contract was formed,

for purposes of that portion of the transaction . . . especially when entered into at arm's length by

sophisticated contracting parties") (alteration in original) (citations omitted); *Solomon v. Canon*

*USA, Inc.*, 31 Misc.3d 30, 32 (1st Dep't 2010) (enforcing exclusive remedy clause to dismiss

warranty claim at the pleading stage pursuant to U.C.C. § 2-719(1)).

An exclusive remedy clause can only be disregarded if it is "unconscionable," or "fails of

its essential purpose." U.C.C. § 2-719(2) & off. cmt. 1; *Solomon*, 31 Misc.3d at 32 ("[a] limited

or exclusive remedy contained in a warranty will be upheld unless it fails of its essential purpose");

s*ee also Put-Back*, 36 N.Y.3d at 351–52 (allegations of gross negligence cannot render a sole

remedy provision unenforceable). Neither is pleaded. To the contrary, Serifos admits that it used

some of the marine fuel without alleged damage, and GSPL replaced the remainder except for

62.14 mt (1.5% of the total volume supplied). Am. Compl. ¶ 26. No explanation is provided

concerning the 62.14 mt; plaintiffs do not, for example, plead that GSPL is incapable of replacing

that volume.[4]

Under section 7(d) of the GTCs, plaintiffs are therefore prohibited from seeking

compensatory damages for the alleged "off-specification supply." Ex. B (GTCs) § 7(d); *see also*

*Put-Back*, 36 N.Y.3d at 351–52 (pursuant to sole remedy clause, reversing First Department and

dismissing contract claim seeking compensatory damages); *Solomon*, 31 Misc.3d at 32 (dismissing

---

[4]      Serifos's sole remedy as to the alleged 62.14 mt is to request that volume from GSPL, not to initiate
a lawsuit for monetary damages. *See Xerox Corp. v. JCTB Inc.*, 787 Fed. Appx. 43, 44 (2d Cir. 2019)
(buyer's "exclusive remedy for a purported breach by [seller] was not litigation, but to request new
equipment").

warranty claim where plaintiff failed to plead facts establishing that a sole repair and replacement remedy failed of its essential purpose); *Rothschild v. General Motors LLC*, 2020 U.S. Dist. LEXIS 187300, at *28 (E.D.N.Y. Sept. 30, 2020) (same).

Count I thus fails to plead recoverable damages, and should be dismissed.

### B.       The Limitation of Liability Bars Plaintiffs' Claims

The contract claim should be dismissed for the additional reason that it seeks consequential damages that are barred by the limitation of liability, section 7(a) of the GTCs.

In section 7(a), the parties agreed that GSPL's liability "shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery Vessels or to their engines or tanks, and any actual or prospective loss of profits." Ex. B (GTCs) § 7(a).

"[A] limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Net2Globe Int'l v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 450 (S.D.N.Y. 2003), quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994). Further, a limitation of liability should be enforced at the pleading stage, otherwise "contracting parties would be stripped of the substantial benefit of their bargain." *Indus. Risk Ins. v. Port Auth. of N.Y. & N.J.*, 387 F. Supp. 2d 299, 3068 & n.2 (S.D.N.Y. 2005) (collecting authority).

The Amended Complaint does not plead facts to establish general damages under U.C.C. § 2-714, or identify any losses outside the scope of section 7(a) of the GTCs. Nor could it, given that the marine fuel was either consumed by Serifos or replaced at GSPL's expense. Instead, the claimed losses relate to additional marine fuel for the vessel to complete its voyage and fulfill its commercial obligations, the costs of deviation to procure that replacement fuel, and related costs.

Am. Compl ¶ 26.  All of those losses are consequential and barred by the limitation of liability.  *See VL8 Pool I*, 2021 U.S. Dist. LEXIS 56968, at \*4, \*10 (identical limitation of liability barred claims for deviation, costs "to take on fresh marine fuel," demurrage, and related costs) (collecting authority).  Count I should therefore be dismissed.

### C.    At a Minimum, Count I Should Be Dismissed to the Extent It Seeks Damages In Excess of the $300,000 Liability Cap

While Count I should be dismissed in its entirety, at a minimum, any damages claims in excess of the $300,000 liability cap should be dismissed.  Ex. B (GTCs) § 7(a); U.C.C. § 2-719(1)(a) ("the agreement . . . may limit . . . the measure of damages recoverable"); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317–18 (S.D.N.Y. 2008) (dismissing portion of claims seeking recovery in excess of contractual limitation on damages) (collecting authority).

## II.    The Tort Claims for Negligence (Count II) and Strict Liability (Counts III–IV) Are Barred by the Economic Loss Rule

The claims for negligence (Count II) and strict liability (Count II-III) should be dismissed because they are barred by the economic loss rule of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986); s*ee also Bocre Leasing Corp. v. GMC*, 84 N.Y.2d 685, 689–94 (1994) (adopting the *East River* rule as the law of New York).

Pursuant to the rule, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."  *East River*, 476 U.S. at 871; *see also Am. Petrol. and Transp., Inc. v. City of New York*, 737 F.3d 185, 195–96 (2d Cir. 2013) ("economic losses are not recoverable for an unintentional maritime tort in the absence of physical injury").

The rule recognizes that commercial parties can allocate the risk of economic losses to the buyer resulting from a product that is defective or fails to perform as expected, and "in exchange, the purchaser pays less for the product."  *East River*, 476 U.S. at 873.  The rule therefore prohibits

the buyer from attempting to avoid its contractual bargain by pursuing tort remedies for what is essentially a warranty claim.  *Id.* at 872–73 ("Damage to a product itself is most naturally understood as a warranty claim."); *see also Am. Dredging Co. v. Plaza Petrol. Inc.*, 845 F. Supp. 91, 93 (E.D.N.Y. 1993) ("[w]here parties are in a commercial setting and where they negotiate as to how consequential damages will be allocated . . . one party should not be able to circumvent an agreement by claiming a tort remedy"); *Sing. Airlines, Ltd. v. Gen. Elec. Co.*, 2019 N.Y. Misc. LEXIS 6965, at *18–19 (Sup. Ct. N.Y. Cty. Dec. 30, 2019) ("It is beyond cavil that absent damage to persons or other property, a manufacturer in a commercial relationship is generally not liable in tort to a purchaser of a defective product but is relegated to seek damages pursuant to the negotiated terms of the underlying contract."), citing *East River*, 476 U.S. at 858, *Bocre Leasing*, 84 N.Y.2d at 689.

The economic loss rule squarely applies to plaintiffs' tort claims.  This is a commercial transaction in which plaintiffs requested that the GTCs and the allocation of risk therein apply to the sale.  Ex. A.  The claims are premised on the allegation that the fuel oil was defective and not suitable for use in a marine engine, allegedly in violation of the ISO 8217 and MARPOL Annex VI warranties in the contract.  *See* Am. Compl. ¶¶ 37, 43, 49.  And there are no pleaded facts that suggest plaintiffs are seeking damages due to physical injuries, such as costs of repair, or any losses distinct from the alleged contract damages.

The economic loss rule prohibits repackaging such warranty claims as torts, and has been applied to dismiss nearly identical tort claims based on the alleged sale of contaminated fuel oil. *See Am. Dredging*, 845 F. Supp. at 93 ("Like the plaintiff in *East River*, [buyer] seeks to place itself in the position it would have been in if the oil had not been contaminated.  Under such circumstances, this court determines that plaintiff[']s remedy properly lies in contract not in tort.");

*Omegra Shipping PTE Ltd. v. World Fuel Servs. (Sing.) PTE Ltd.*, 2022 U.S. Dist. LEXIS 147343, at *25 (S.D. Fla. Aug. 17, 2022) (where contract required ISO 8217 fuel oil, dismissing negligence claim alleging seller "had a non-contractual duty to provide marine fuel" suitable for vessel engines); *Curacao Oil NV v. Trafigura Pte Ltd.*, 2020 N.Y. Misc. LEXIS 2902, at *8 (Sup. Ct. N.Y. Cty. Feb. 3, 2020) (same, dismissing negligence claim that seller "failed to . . . ensure the fuel oil it was supplying did not contain . . . contaminants which rendered it unusable and/or unsafe for marine applications"), *aff'd*, 189 A.D.3d 404 (1st Dep't 2020); *Centurion Bulk Pte Ltd. v. NuStar Energy Servs.*, 2020 U.S. Dist. LEXIS 249059, at *4, n.9 (S.D. Tex. March 24, 2020) (where parties had a valid contract for sale of marine fuel, tort claims for negligence and products liability "are not viable" pursuant to maritime economic loss rule) (citation omitted).

The negligence and strict liability claims should therefore be dismissed.

## III.    The Fraud Claim (Count V) Should Be Dismissed

The fraud claim should be dismissed for multiple, independent reasons.

### A.    The Fraud Claim Is Barred by the Economic Loss Rule

As a threshold matter, this purported fraud claim is also a repackaged contract claim, and barred by the economic loss rule. *See My Buddy Davis, LLC v. Starboard Yacht Grp., LLC*, 2022 U.S. Dist. LEXIS 107606, at *12 (S.D. Fla. June 16, 2022) ("where a fraud claim is 'inextricably tied' to a breach of maritime contract claim, the maritime economic loss rule bars the fraud claim") (collecting authority); *see also Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 420–21 (E.D.N.Y. 2013) (under New York law, "[a] fraud claim cannot exist when it arises out of the same facts as a breach of contract claim") (cleaned up).

The only alleged misrepresentation was that the fuel oil would meet the "specifications agreed to between the parties," as stated in the contractual documents. Am. Compl. ¶ 52. Plaintiffs do not allege that GSPL made any statements other than describing the quality of the product. The

fraud claim is therefore duplicative of the contract claim and barred by the economic loss rule. *See St. Clair Marine Salvage, Inc. v. M/Y Blue Marlin, MC No. 5937 RL*, 2014 U.S. Dist. LEXIS 75164, at *20–21 (E.D. Mich. June 3, 2014) (maritime economic loss rule prohibits claims for misrepresentations regarding the "quality or character" of goods or services subject to the contract); *My Buddy Davis*, 2022 U.S. Dist. LEXIS 107606, at *13–14 (economic loss rule barred fraud claim based on representations that equipment "was suitable for the vessel" made to induce plaintiff to enter maritime contract); *Del Cibao v. 3 Kids Corp.*, 2021 U.S. Dist. LEXIS 193506, at *6 (S.D.N.Y. Oct. 6, 2021) (denying motion to amend to add fraud claim that related to a claim "about the quality of the goods" because such a claim "sounds in the provisions of the Uniform Commercial Code"); *cf. ADMIntermare v. Kamca Trading S.A.*, 2022 U.S. Dist. LEXIS 51442, at *11 (S.D.N.Y. Mar. 22, 2022) (economic loss rule barred negligent misrepresentation claim based on allegation that "[d]efendants represented that the fuel met ISO 8217-2010 specifications for RMG380"). Count V should therefore be dismissed.

### B.    The Pleaded Facts Fail to Establish Any Intent to Defraud

The fraud claim should also be dismissed pursuant to Fed. R. Civ. P. 9(b), because plaintiffs do not plead that GSPL intended to defraud plaintiffs. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) ("plaintiffs must allege facts that give rise to a *strong inference of fraudulent intent*") (emphasis original) (collecting authority); *Thypin Steel Co. v. Certain Bills of Lading*, 1998 U.S. Dist. LEXIS 20212, at *13–14 (S.D.N.Y. Dec. 30, 1998) (essential element of maritime fraud is defendant "intended to defraud plaintiffs"), *aff'd*, 215 F.3d 273 (2d Cir. 2000). The Amended Complaint does not even allege in a conclusory way that GSPL acted with fraudulent intent, let alone plead facts necessary to meet this high burden.

Plaintiffs do not, for example, claim that GSPL had a motive or any reason to defraud plaintiffs. Nor do the factual allegations "constitute strong circumstantial evidence of conscious

misbehavior or recklessness." *Chill*, 101 F.3d at 267; *see also S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 112 (2d Cir. 2009) ("By reckless disregard for the truth, we mean conscious recklessness—*i.e.*, a state of mind *approximating actual intent,* and *not merely a heightened form of negligence*.") (emphasis original) (cleaned up).

The conclusory allegation that GSPL "knew the specifications of the bunkers before it supplied them" is unsupported by any fact (Am. Compl. ¶ 58), but even if taken at face value, does not establish scienter. *See Duchimaza v. Niagara Bottling, LLC*, 2022 U.S. Dist. LEXIS 139837, at *32 (S.D.N.Y. Aug. 5, 2022) ("[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent") (collecting authority). The remaining allegations, that GSPL "would" have detected organic chlorides if GSPL had "suitable quality assurance procedures" or conducted "further testing" (*see, e.g.*, Am. Compl. ¶ 66) also fall well short of establishing an intent to defraud. *See S. Cherry*, 573 F.3d at 112 (allegation that defendant "would" have learned the truth but "failed to take obvious investigative steps and ignored clear red flags" failed to establish recklessness); *Chill*, 101 F.3d at 268 (alleged failure to heed "red warning flags" insufficient); *Hoffman v. Kashi Sales, L.L.C.*, 2022 U.S. Dist. LEXIS 229070, at *19 (S.D.N.Y. Dec. 20, 2022) ("constructive knowledge" allegations are "manifestly insufficient") (cleaned up); *Matana v. Merkin*, 2014 U.S. Dist. LEXIS 13747, at *12–13 (S.D.N.Y. Feb. 4, 2014) (defendant "may well have been irresponsible or slipshod if he did not attempt to learn" the truth, "but irresponsibility does not equate to fraudulent intent"); *Rotterdam Ventures v. Ernst & Young LLP*, 300 A.D. 2d 963, 965 (3d Dep't 2002) (failure to act with "notice of a potential problem" does not establish recklessness).

Plaintiffs cannot establish fraudulent intent. Count V should therefore be dismissed.

**IV.    The Gross Negligence Claim (Count VI) Should Be Dismissed**

The gross negligence claim (Count VI) should be dismissed for similar reasons.

**A.        The Economic Loss Rule Bars the Gross Negligence Claim**

First, the economic loss rule bars this claim for the same reason it prohibits the above tort claims—it is premised on GSPL allegedly selling fuel that was "defective," and plaintiffs do not plead physical injuries.  *See AGIP Petrol. Co. v. Gulf Island Fabrication, Inc.*, 920 F. Supp. 1330, 1340 (S.D. Tex. 1996) ("whether a products liability claim is asserted under a negligence, including gross negligence, or strict liability theory, no cause of action is available if the claimed injury is solely economic in nature"), citing *East River*, 476 U.S. at 876.

The economic loss rule further bars this tort claim because it is substantively identical to the breach of contract claim.  The Amended Complaint does not identify any legal duty to plaintiffs outside of the contract that was allegedly breached.  Instead, plaintiffs allege that GSPL breached a duty to deliver fuel oil that satisfied "the contract specifications or industry standards."  Am. Compl. ¶¶ 64–65.  The duty to provide fuel oil meeting contractual specifications and the ISO 8217 and MARPOL standards arises under the sale contract. Ex. A.  It is the same duty underlying plaintiffs' contract claim, and provides no basis for separate liability in tort.  *See* Am. Compl. ¶ 31 ("In breach of that contract, [GSPL] failed to provide bunker fuel that met the requirements of the contract including those specifications required for marine bunker fuel under MARPOL Annex VI and ISO 8217:2017."); *see also Curacao Oil*, 2020 N.Y. Misc. LEXIS 2902, at *8 (allegation that seller failed to ensure fuel oil was free of contaminants that rendered it unsafe for marine applications was not "extracontractual" but "echoes" the claim for breach of the ISO 8217 standard); *Omegra Shipping*, 2022 U.S. Dist. LEXIS 147343, at *24 (same).  Plaintiffs also fail to identify any damages allegedly due to gross negligence that were not contemplated by and allocated under the contract.

The gross negligence claim is therefore duplicative of the contract claim and prohibited by the economic loss rule.  *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390 (1987) (dismissing gross negligence claim because "plaintiff has not alleged the violation of a legal duty independent of the contract" and the damages sustained were "within the contemplation of the written agreement"); *see also Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279, 1283 (2d Cir. 1994) (claims in negligence "cannot be the basis of liability where [defendant's] sole legal duties to [plaintiff] arose entirely out of a contract.  This is so . . . whether resort is had to federal maritime law . . . or to New York law"), citing *East River*, 476 U.S. at 858, *Clark-Fitzpatrick*, 70 N.Y.2d at 382; *Great Lakes Reins. (UK) PLC v. Sunset Harbour Marina, Inc.*, 2011 U.S. Dist. LEXIS 165775, at *8–9 (S.D. Fla. July 1, 2011) ("[Plaintiff's] gross negligence claim is therefore simply a restatement of its breach of contract claim, except that it has been re-fashioned as a tort-based cause of action.  This is exactly what the economic loss doctrine was intended to prohibit.") (collecting authority).

### B.    Plaintiffs Do Not Plead Facts to Meet the High Standard for Gross Negligence

The Amended Complaint also fails to satisfy the high standard for establishing gross negligence.  "Gross negligence is defined as harm willfully inflicted or caused by gross or wanton negligence."  *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986).  Where, as here, the gross negligence claim is asserted to avoid a limitation of liability agreed by commercial parties (*see* Am. Compl. ¶ 31), the plaintiff must make "a compelling demonstration of egregious intentional misbehavior evincing extreme culpability:  malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."  *Deutsche Lufthansa AG v. Boeing Co.*, 2007 U.S. Dist. LEXIS 9519, at *7 (S.D.N.Y. Feb. 2, 2007) (collecting authority); *see also Mindspirit v. Evalueserve Ltd.*, 2016 U.S. Dist.

LEXIS 202616, at *25 (S.D.N.Y. Sept. 24, 2016) ("Gross negligence implies willful or intentional misconduct.") (citation omitted) (collecting authority).[5]

To meet this standard, a plaintiff must plead facts that show egregious misconduct or extreme culpability of an aggravated character. *Deutsche Lufthansa*, 2007 U.S. Dist. LEXIS 9519, at *9 (plaintiff "makes no allegations that [defendant] engaged in any malicious behavior, any series of callous acts, or intentional wrongdoing"). Here, plaintiffs only plead the same substantive allegations underlying their contract, negligence and strict liability claims, with the addition of conclusory labels such as "drastic," "extreme," or "callous."[6] *See D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 U.S. Dist. LEXIS 50323, at *23 (W.D.N.Y. Mar. 25, 2019) ("Simply appending conclusory words or phrases, such as 'knowingly' or 'intentionally,' to allegations of ordinary negligence does not satisfy the aggravated nature of a gross negligence claim.") (collecting authority); *see also Sutton Park Dev. Corp. Trading Co., Inc. v. Guerin & Guerin Agency Inc.*, 297 A.D.2d 430, 431 (3d Dep't 2002) (affirming dismissal of gross negligence claim pleaded "without any additional allegations of fact" beyond those asserted for contract and negligence claims).

Judge Carter recently addressed allegations that are substantively identical to those in the Amended Complaint, and held they failed to establish gross negligence as a matter of law. *See*

---

[5]    Because the tort of gross negligence is not well-developed in admiralty, federal courts will apply common law and the law of the states in which they sit to maritime gross negligence claims. *See*, *e.g.*, *Houston Exploration Co. v. Halliburton Energy Servs.*, 269 F.3d 528, 531–32 (5th Cir. 2001) (applying Louisiana's standard of "willful, wanton and reckless conduct" to plaintiff's maritime gross negligence claim); *Great Lakes*, 2011 U.S. Dist. LEXIS 165775, at *3–4 (applying Florida law to maritime gross negligence claim given "the absence of well-developed maritime law") (collecting authority); *see also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and New York law in particular") (collecting authority).

[6]    *Compare*, *e.g.*, Am. Compl. ¶ 49 (strict liability: GSPL "failed to conduct reasonable inspections to identify defects") *with id.* ¶ 66 (gross negligence:  alleged failure to "perform any further testing" was an "extreme departure" from industry standards); *id.* ¶ 44 (strict liability:  GSPL "failed to warn Plaintiffs and/or the Vessel of the bunkers' latent dangers") *with id.* ¶ 67 (gross negligence:  "In callous disregard of its responsibilities, [GSPL] made no effort to remedy or advise Plaintiffs of the non-compliant fuel . . . .").

*VL8 Pool, Inc. v. Glencore Ltd.*, 2021 U.S. Dist. LEXIS 245803 (S.D.N.Y. Dec. 27, 2021) ("*VL8 Pool II*"). In *VL8 Pool II*, the plaintiff argued that Glencore Ltd. was grossly negligent in its sale of marine fuel, because it allegedly "had actual or constructive knowledge" that the marine fuel "was contaminated and dangerous to use." *Id.* at *7. The pleaded facts showed that Glencore Ltd. received two vessel complaints concerning the fuel prior to the delivery to the plaintiff. *Id.* at *7–8. Rejecting the argument made by plaintiffs here, Judge Carter held that "the failure to act on two reports of possible contamination" was not conduct of "such aggravated character" that it could even make a "*plausible* showing of gross negligence." *Id.* (emphasis original), citing *Sutton Park*, 297 A.D.2d at 43, *Deutsche Lufthansa*, 2007 U.S. Dist. LEXIS 9519, at *11.

There is no material difference between the allegations in *VL8 Pool II* and the instant case.[7] Plaintiffs allege that organic chlorides were reportedly identified in fuel oil sold to three vessels by two suppliers in Singapore, and that "sediment problems" in certain other vessels suggested "that contamination was likely." Am. Compl. ¶ 25; Ex. G. There are no factual allegations that any of the numerous other customers supplied by GSPL during this time period reported any issues. Plaintiffs argue that GSPL should have acted on these reports by performing "further testing" that "would result in their discovering" organic chlorides. *Id.* ¶ 66. Yet plaintiffs also admit GSPL knew that Serifos would perform tests to detect possible organic chlorides before using the marine fuel, which Serifos did. Am. Compl. ¶¶ 18–19; Ex. A.

Putting aside whether it would have been reasonable or prudent for GSPL to conduct additional testing, those pleaded facts come nowhere close to demonstrating "egregious intentional misbehavior" or "extreme culpability" by GSPL. *VL8 Pool II*, 2021 U.S. Dist. LEXIS 245803, at

---

[7]     For the reasons discussed above, plaintiffs do not (and could not) contend that *VL8 Pool* and the other "Houston problem" cases cited in the Amended Complaint provided actual or constructive notice concerning the alleged presence of organic chlorides in fuel sold in Singapore in 2022.

*7–8; *Deutsche Lufthansa*, 2007 U.S. Dist. LEXIS 9519, at *7; *see also Howe v. Ethicon, Inc.*, 2022 U.S. Dist. LEXIS 117292, at *6, *19 (S.D.N.Y. June 27, 2022) (allegation that defendants "failed to perform or rely on proper and adequate testing" of defective product does not meet the "high standard" for gross negligence); *Rotterdam Ventures*, 300 A.D. 2d 963 at 965 ("[t]o the extent that plaintiffs allege that the subject transactions at least should have placed defendant on notice of a potential problem, this constitutes nothing more than an allegation of ordinary negligence").

Plaintiffs also allege that GSPL "failed to undertake suitable quality assurance procedures" or to "exercise even a scintilla of care." Am. Compl. ¶ 66. Yet the Amended Complaint does not include *any* pleaded fact concerning GSPL's quality assurance procedures, let alone facts that explain whether or how GSPL's quality procedures or the tests it performed constituted an "extreme departure" from a standard of care. *See Howe*, 2022 U.S. Dist. LEXIS 117292, at *19 ("gross negligence requires a plaintiff to prove that the defendant failed to exercise even slight care" and general allegations concerning the manufacture and testing of a defective product do "not sufficiently allege what and how Defendant's alleged misconduct was an extreme departure from the standards of ordinary care") (cleaned up).

Finally, the alleged risks and harm to plaintiffs associated with the allegedly off-specification marine fuel are not of the aggravated character necessary to establish gross negligence. In *Omega Shipping*, the court dismissed a similar maritime gross negligence claim because risks such as the vessel being unable to consume the fuel, or incurring deviation and other costs for debunkering and to purchase alternative fuel, were a "normal or usual peril" in the industry. 2022 U.S. Dist. LEXIS 147343, at *4, *37–38. In this case, notwithstanding its rhetoric concerning the "dangers" of organic chlorides, Serifos admits it authorized the vessel to consume

the GSPL fuel with full knowledge of their alleged presence.  Am. Compl. ¶ 26.  And, as in *Omegra Shipping*, the only alleged harm to Serifos were ordinary commercial losses such as deviation costs or the costs of replacement fuel.  *Id.* ¶ 26.  That is not the type of unreasonable danger necessary to establish that a marine fuel supplier was grossly negligent under maritime law.  *Omegra Shipping*, 2022 U.S. Dist. LEXIS 14743, at *37–38.

For any of these reasons, plaintiffs have failed to make a "compelling demonstration of egregious intentional misbehavior evincing extreme culpability." *Deutsche Lufthansa*, 2007 U.S. Dist. LEXIS 9519, at *7.  Count VI should be dismissed

## **CONCLUSION**

The Amended Complaint should be dismissed with prejudice.

Dated:      New York, New York
            February 14, 2023

Respectfully submitted,

HERBERT SMITH FREEHILLS
  NEW YORK LLP

By:   */s/ Peter J. Behmke*
     Peter J. Behmke
     Michael P. Jones
     Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel:  (917) 542-7600
Fax:  (917) 542-7601
Email:  Peter.Behmke@hsf.com
       Michael.Jones@hsf.com
       Barron.Flood@hsf.com

*Attorneys for Glencore Singapore Pte Ltd.*