UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| SERIFOS MARITIME CORPORATION | : | |
| and ANDROS MARITIME AGENCIES LTD | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | 22-CV-8012 (LGS) |
| | : | |
| GLENCORE SINGAPORE PTE LTD, | : | |
| | : | |
| | : | March 7, 2023 |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Attorneys for Plaintiffs
Serifos Maritime Corporation and
Andros Maritime Agencies Ltd.
TISDALE & NAST LAW OFFICES, LLC
Thomas L. Tisdale (TT5263)
Timothy J. Nast (TN8578)
Chrysler Building
405 Lexington Ave., 26th Floor
New York, NY  10174
Tel:     212-354-0025
ttisdale@tisdale-law.com
tnast@tisdale-law.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………...1

BACKGROUND…………………………………………………………………………….2

STANDARD OF REVIEW…………………………………………………………….…...7

ARGUMENT……………………………………………………………………………...7

**POINT ONE**

GLENCORE'S ARGUMENTS ARE NOT SUSCEPTIBLE
TO RESOLUTION ON A RULE 12 MOTION……………………………………….…...7

    A.    Breach of Contract………………………………………………………...7

    B.    Gross Negligence…………………………………………………………8

    C.    Fraud…………………………………………………………………...9

**POINT TWO**

GLENCORE'S PURPORTED CONTRACTUAL
LIMITATIONS ARE UNENFORCEABLE……………………………………………..10

    A.    Plaintiffs do not Seek "Consequential Damages"……………………….10

    B.    Even if Considered "Consequential," the GTC Limitation is
        Unconscionable……………………………………………………….11

    C.    Enforcement of the Limitation of Liability Would
        Fail of Its Essential Purpose……………………………………………...12

    D.    Glencore is not Permitted to Release Itself from
        Grossly Negligent Conduct………………………………………………13

**POINT THREE**

THE ECONOMIC LOSS RULE
DOES NOT BAR PLAINTIFFS' RECOVERY………………………………………………14

    A.    The Economic Loss Rule…………………………………………...14

B.     The Economic Loss Rule does not Bar Claims of Intentional / Fraudulent
       Misrepresentation…………………………………………………………...17

**POINT FOUR**

PLAINTIFFS' AMENDED VERIFIED COMPLAINT
STATES A CLAIM FOR FRAUD……………………………………………………17

A.     Plaintiffs Satisfy the Rule 9
       Pleading Requirements for Fraud……………………………………………..17

B.     Plaintiffs have Pled the Substantive Elements of Fraud………………………...19

       1.     Representation of a Material Fact……………………………………..19

       2.     Falsity…………………………………………………………………19

       3.     Scienter………………………………………………………………..20

       4.     Reasonable Reliance…………………………………………………..22

       5.     Injury…………………………………………………………………..22

C.     Plaintiffs' fraud claim is not Duplicative of Their Breach of
       Contract Claim………………………………………………………………...23

**POINT FIVE**

PLAINTIFFS' GROSS NEGLIGENCE
CLAIM IS LEGALLY SUFFICIENT…………………………………….…………...24

**POINT SIX**

GLENCORE'S EXTENSIVE EXPERIENCE
WITH DEFECTIVE BUNKERS BOLSTERS
PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS………………………………...26

**POINT SEVEN**

SHOULD THE COURT DEEM ANY CAUSE OF ACTION
INSUFFICIENT PLAINTIFFS RESPECTFULLY
REQUEST LEAVE TO AMEND………………………………………………...28

**TABLE OF AUTHORITIES**

C<span>ASES</span>

*AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,*
    920 F. Supp. 1330 (S.D. Tex. 1996)…………………………………………………………25

*Am. Dredging Co. v. Plaza Petroleum Inc.,*
845 F. Supp. 91  (E.D.N.Y. 1993)……………………………………………………....15

*Am. Petroleum & Transp., Inc. v. City of New York*,
    737 F.3d 185 (2d Cir. 2013)……………………………………………………………...15

*AMW Materials Testing, Inc. v. Town of Babylon,*
    584 F.3d 436, 454 (2d Cir.2009)…………………………………………………………24

*APL Co. PTE v. Blue Water Shipping U.S. Inc.,*
    592 F.3d 108 (2d Cir. 2010)……………………………………………………………...12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………………………………………………………7,8

*AT & T v. City of New York,*
    83 F.3d 549 (2d Cir.1996)………………………………………………………………..24

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,
    692 F.3d 42 (2d Cir. 2012)………………………………………………………………24

 *Belfont Sales Corp. v. Gruen Indus. Inc.,*
    112 A.D.2d 96 (1985)……………………………………………………………………12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………………………7

*Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.,*
    557 F. Supp. 3d 381 (E.D.N.Y. 2021)……………………………………………………17

*Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*,
    639 F.3d 207 (5th Cir. 2011)…………………………………………………………...15-16

*Cayuga Harvester, Inc. v. Allis–Chalmers Corp.,*
    95 A.D.2d 5 (1983)………………………………………………………………………12

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,*
    4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)…………………..……23

*Chill v. Gen. Elec. Co.,*
   101 F.3d 263 (2d Cir. 1996)……………………………………………….....17, 21

*Civil Service Empl. Ass'n, Inc. v. Public Empl. Rel. Bd.,*
   132 A.D.2d 430, 522 N.Y.S.2d 709 (3d Dep't 1987)……………………………………...24

*Clark–Fitzpatrick v. Long Island R.R. Co.,*
   70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)…………………………23

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.,*
   81 N.Y.2d 821, 823, 611 N.E.2d 282, 595 N.Y.S.2d 381 (1993)………………………..24

*Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n,*
   239 F. Supp. 2d 316 (E.D.N.Y. 2003)…………………………………………………14

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.,*
   71 F.3d 198 (5th Cir.1995)……………………………………………….....15-16

*Curacao Oil N.V. v. Trafigura Pte. Ltd.,*
   67 Misc. 3d 1235(A), 128 N.Y.S.3d 781 (N.Y. Sup. Ct. 2020)…………………………25

*Di Vittorio v. Equidyne Extractive Industries, Inc.,*
   822 F.2d 1242 (2d Cir.1987)……………………………………………….....21

*Doe v. Indyke,*
   457 F. Supp. 3d 278 (S.D.N.Y. 2020)…………………………………………..7

*Drexel Burnham Lambert Grp., Inc. v. Microgenesys, Inc.,*
   775 F. Supp. 660 (S.D.N.Y. 1991)……………………………………………20-21

*East River S.S. Corp v. Transamerica Delaval Inc.,*
   476 U.S. 858 (1986)………………………………………………………14-15

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
   387 F. Supp.2d 265 (S.D.N.Y. 2004)…………………………………...17, 18, 23

*Freeman v. HSBC Holdings PLC,*
   57 F.4th 66 (2d Cir. 2023)………………………………………………………7

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.,*
   405 F. Supp. 3d 408 (W.D.N.Y. 2019)…………………………………………..9

*Friar v. Wyndham Vacation Resorts, Inc.,*
   No. 20-CV-2627 (JPO), 2021 WL 1062615 (S.D.N.Y. Mar. 19, 2021)………....…9, 18, 19

iv

*Gentile v. Garden City Alarm Co.,*
  147 A.D.2d 124, 541 N.Y.S.2d 505 (2d Dep't 1989)………………………………......8

*Gillman v. Chase Manhattan Bank, N.A.,*
  73 N.Y.2d 1 (1988)……………………………………………………………………11

*G-I Holdings, Inc. v. Baron & Budd,*
  No. 01-CV-0216, 2003 WL 193502, at *12 (S.D.N.Y. Jan. 29, 2003)……………………21

*Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.,*
  212 A.D.2d 577, 578, 622 N.Y.S.2d 740 (1995)…………………………………………...24

*Hargrave v. Oki Nursery, Inc.,*
  636 F.2d 897 (2d Cir.1980)……………………………………………………………23

*Hoffmann v. Kashi Sales, L.L.C.,*
  No. 21 CV 9642 (VB), 2022 WL 17823171 (S.D.N.Y. Dec. 20, 2022)…………………18

*Kalisch-Jarcho, Inc. v. City of New York,*
  58 N.Y.2d 377 (1983)……………………………………………………………………14

*Matter of Karp v. Hults,*
  12 A.D.2d 718, 209 N.Y.S.2d 128 (3d Dep't 1960)………………………………………14

*Koch v. Greenberg,*
  No. 07 Civ. 9600 (BSJ) 2008 WL 4778813, at *6 (S.D.N.Y. Oct. 31, 2008)………………19

*Kraft v. Staten Island Boat Sales, Inc.,*
  715 F. Supp. 2d 464  (S.D.N.Y. 2010)……………………………………………………11

*Laidlaw Transp. Inc. v. Helena Chemical Co.,*
  255 A.D. 2d 869 (4th Dep't. 1998)……………………………………………………11, 12

*Lerner v. Fleet Bank, NA.,*
  459 F.3d 273 (2d Cir. 2006)………………………………………………………………18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
  797 F.3d 160 (2d Cir. 2015)………………………………………………………………28

*Lundy v. Wells Fargo Bank N.A.,*
   No. 08 CIV. 8715 (BSJ), 2011 WL 13128267 (S.D.N.Y. Mar. 10, 2011)…………………9

*Matana v. Merkin,*
  No. 13 CIV. 1534 PAE, 2014 WL 426857 (S.D.N.Y. Feb. 4, 2014)………………......22

*McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.,*
    63 F.3d 1188 (2d Cir. 1995)…………………………………………………………………11

*M. Golodetz Exp. Corp. v. S/S Lake Anja,*
    751 F.2d 1103 (2d Cir. 1985)…………………………………………………………………12

*Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Cap. Holdings LLC,*
    143 A.D.3d 1, 36 N.Y.S.3d 458 (2016)……………………………………………………...8, 13

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)…………………………………………………………………..21

*Omegra Shipping Pte Ltd of Singapore v. World Fuel Services (Singapore) Pte Ltd.*
    Case No. 22-20531, ECF No. 43 (S.D. Fla. Aug. 17, 2022)……………………………..25

*Powers v. British Vita, P.L.C.,*
    57 F.3d 176 (2d Cir. 1995)…………………………………………………………………..21

*President Container Group II, LLC v. Systec Corporation,*
    467 F. Supp.3d 158 (S.D.N.Y. 2020)………………………………………………………....7, 8

*Roneker v. Kenworth Truck Co.,*
    944 F. Supp 179  (W.D.N.Y.1996)……………………………………………………….…..13

*Rotterdam Ventures, Inc. v. Ernst & Young LLP,*
    300 A.D.2d 963, 752 N.Y.S.2d 746 (2002)…………………………………………………22

*Sackin v. Transperfect Global, Inc.,*
    278 F. Supp.3d 739  (S.D.N.Y. 2017)………………………………………………………16

*Scott v. Palermo,*
    233 A.D.2d 869, 870, 649 N.Y.S.2d 289 (4th Dep't 1996)……………………………...12

*Schneider v. Pearson Educ., Inc.,*
    No. 12-CV-6392, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013)…………………...9, 18, 21

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994)………………………………………………………………...17

*Solomon v. Canon USA, Inc.,*
    31 Misc. 3d 30, 920 N.Y.S.2d 565 (1st Dep't 2010)………………………………………13

*Sommer v. Fed. Signal Corp.,*
    79 N.Y.2d 540, 593 N.E.2d 1365, 583 N.Y.S.2d 957 (1992)………………………14, 24

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365  (2d Cir. 2014)……………………………………………………………7

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
    136 F. Supp. 2d 253 (S.D.N.Y. 2001)……………………………………………..8, 24

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
    524 F. Supp. 2d 302 (S.D.N.Y. 2007)……………………………………………13

*VL8 Pool, Inc. v. Glencore Ltd.*,
    No. 1:20-CV-02053 (ALC), 2021 WL 1152936 (S.D.N.Y. Mar. 25, 2021)……...…26, 27

*VL8 Pool, Inc. v. Glencore Ltd.*,
    No. 20-CV-2053-ALC, 2021 WL 6113981 (S.D.N.Y. Dec. 27, 2021)…………...…26, 27

*VTech Holdings Ltd. V. Lucent Technologies, Inc.*,
    172 F.Supp.2d 435 (S.D.N.Y. 2001)…………………………………………..23

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990)…………………………………………………..21

*Wight v. BankAm. Corp.*,
    219 F.3d 79 (2d Cir. 2000)…………………………………………...18, 22

### TREATISE

Restatement (Second) of Contracts § 347 cmt. C…………………………………………10

### STATUTES

15 U.S.C. § 78u-4(b)(2)(A)…………………………………………………………21

N.Y. U.C.C. § 2-715…………………………...……………………………………10

 NY U.C.C. § 2-719…………………………………………………………………12

### FEDERAL RULES OF CIVIL PROCEDURE

FED R. CIV. P. Rule 9………………………………………………………...passim

FED. R. CIV. P. 12………………………………………………………………passim

FED. R. CIV. P. 15…………………………………………………………...28

Plaintiffs Serifos Maritime Corporation ("Serifos") and Andros Maritime Agencies LTD ("Andros") (collectively "Plaintiffs") through their counsel Tisdale & Nast Law Offices, LLC submit this Memorandum of Law in Opposition to Defendant Glencore Singapore Pte Ltd.'s ("Defendant" or "Glencore") Motion to Dismiss (ECF No. 27).

## PRELIMINARY STATEMENT

Vessels and their owners rely on bunker suppliers such as Glencore to provide safe, compliant bunker fuels.  That is also the law. The shipping industry requires vessels to make port calls on an expedited basis due to vessel schedules, logistical concerns, and the sheer volume of cargo which moves in maritime commerce.  Bunker suppliers warrant to vessels and their owners that the fuel is safe and compliant with international standards and regulations.  Detailed testing of bunker samples drawn at delivery of the fuel can take weeks for a full analysis to be received.  Of course, by that time the vessel can be thousands of miles away from the port where the bunkers were delivered.

Glencore cavalierly suggests that the bunkers supplied to Plaintiffs and numerous other parties[1] in Singapore in early 2022 were not unreasonably dangerous and that Plaintiffs are exaggerating the risks.  It is common knowledge in the shipping industry that bad bunkers can cause main engine damage so serious that the vessel can be disabled. If the vessel is disabled, it cannot maneuver in heavy seas and can run the risk of sinking.  Glencore's attitude toward this very real risk perhaps explains why they supplied these bunkers to dozens of vessels and had their bunkering license revoked by the Maritime and Port Authority of Singapore ("MPA") because of

---

[1] According to publicly available internet articles, Glencore and one other supplier sold contaminated bunkers to approximately 200 vessels in Singapore in early 2022, 80 of which suffered problems from the fuel.  The Singapore Maritime Authority revoked Glencore's license to sell bunkers for two months because they continued to sell bunkers after March 20, 2022, when their own investigation showed the contamination.  (Declaration of Thomas L. Tisdale ("Tisdale Decl."), **Exhibits ("Ex.") A and B**).

these incidents.   Without the extraordinary efforts in mitigation taken by Plaintiffs, the damages would have been exponentially worse.

Even without the benefit of discovery, when the totality of the circumstances surrounding Glencore's prior experience with contaminated bunkers and the sheer volume of the 2022 "Singapore Problem" are considered, Glencore's level of knowledge and intent rises to the level of gross negligence and/or willful misconduct.   Discovery will only flesh out these issues more fully. Therefore, the motion to dismiss should be denied in its entirety.

## **BACKGROUND**

Plaintiff Serifos was the registered owner of the M/T SERIFOS, a very large crude oil carrier ("Vessel"). (Verified Amended Complaint, ECF No. 17, ¶ 2). Andros was the London agent for the technical and commercial manager of the Vessel. (*Id.* at ¶ 3).   Defendant is an entity organized under foreign law with an office and place of business in Singapore.  (*Id.* at ¶ 5). The Defendant's parent, Glencore Ltd., is organized under Swiss law and has a place of business in New York, NY. (*Id.* at ¶ 6).

This case concerns ship fuel also known as "bunkers" provided to the Plaintiff's Vessel in Singapore on March 12, 2022.  On March 10, 2022, Plaintiffs received a Bunker Confirmation Note confirming the details of the upcoming bunker supply ("stem"), including written assurances that the product to be delivered would conform to the agreed upon standards established under international law. (*Id*. at ¶ 12). The Bunker Confirmation Note also noted:

> THE FUEL SHOULD BE PRODUCED FROM UNUSED HYDROCARBONS DERIVED FROM PETROLEUM REFINING. IT SHOULD BE FREE FROM SPENT LUBRICANTS AND ANY OTHER WASTE AND HARMFUL PRODUCTS.

(Behmke Decl., Ex. A; ECF No. 31-1, p. 4 of 5).

2

Defendant Glencore confirmed that these terms were acceptable in an email dated March 10, 2022. (*Id*. at ¶12).  Plaintiffs relied upon these multiple assurances when entering the bunker supply contract.  (*Id*. at ¶¶ 52, 61)

When delivery was completed, Defendant issued a Bunker Delivery Note ("BDN"), which again represented to Plaintiffs the quantity loaded and that the bunkers satisfied MARPOL Annex VI.  (*Id*. at ¶ 14).  Regulation 18 of MARPOL Annex VI requires that the fuel be free from inorganic acids or chemical waste which could jeopardize the ship. (*Id*. at ¶ 15).    It is standard practice in the industry that vessels must rely upon these representations due to the very short amount of time in port.  (ECF No. 17, ¶13). Full laboratory analysis of the fuel samples can take weeks to obtain. (*Id*. at ¶18).

Defendant is familiar with bunker contamination claims since Glencore's affiliate was a party to multiple lawsuits by other vessel owners who suffered the consequences of contaminated bunker fuel which caused damage to engine parts and, in some cases, complete engine failure.  (*Id.* at ¶ 16).

In fact, Glencore too was the victim of impermissible use of foreign compounds and waste products in bunker fuels and sued another chemical provider in 2019.  (*Id.* at ¶ 17). Specifically, Defendant alleged that this company should have performed gas chromatography – mass spectrometry ("GCMS") and Fleurier transform infrared spectrometry ("FTIR") tests to determine the presence of these contaminants, and that the failure to do so was negligent.  (*Id.*)  Plaintiffs do not presently know whether Defendant performed any such tests on the subject bunkers before delivering them to Plaintiffs or any of the dozens of other victims but have sought such information in discovery.  (Tisdale Decl. **Ex. D**).

By the time Plaintiffs received the complete results of the GCMS testing, the Vessel was already well underway to its next port of call.  (*Id.* at ¶¶ 18-19, 26).  Fuels containing such substances are dangerous to a vessel, its machinery, its crew, and the environment since they pose a serious risk of causing mechanical failure.  (*Id.* at ¶ 21).

Bunkers containing organic chlorides are considered off-specification pursuant to ISO 8217:2017 and MARPOL Annex VI.  (*Id.* at ¶ 23).  The presence of these compounds also violates the warranty in the Bunker Confirmation Note.  Based in part on its prior experience from 2018, Glencore knew that it must provide fuel which conforms with the specifications, which may require GCMS and FTIR testing.  (*Id.* at ¶ 24).  Defendant knew full well the potential life-threatening hazards associated with defective bunkers.

According to industry sources, the presence of organic chlorides in Defendant's bunkers was detected as early as February 2022.  (*Id.* at ¶ 25).  In their first requests for production, Plaintiffs requested information regarding what, if any, tests Defendant performed on the bunkers. (Tisdale Decl. **Ex. D**).  Even if Defendant did not perform these tests, it was aware from the earlier stemmed vessels of the presence of these materials.  Despite this knowledge, Glencore took no action to rectify the problem and continued selling these contaminated bunkers to unwary vessels, such as the SERIFOS.  (*Id.* at ¶ 25).  In addition to the news article attached as **Exhibit B** to the Tisdale Declaration, bunker fuel laboratories issued advisory notices about dangerously high levels of organic chlorides in the fuel that suppliers were stemming in Singapore, including Glencore. (*Id.*)  One such laboratory alerted the industry on March 1, 2022 that it had already identified three vessels whose bunkers it analyzed and found contaminated with organic chlorides.  (ECF No. 17, ¶25).  Defendant took no action to rectify this problem or to advise previously stemmed vessels of these risks.  (*Id.*).  Instead, Defendant and one other supplier supplied no less than 200 vessels

(including the SERIFOS) with this fuel reportedly causing damage to at least 80 of them. (MPA Press Release dated August 3, 2022 and Seatrade Maritime news article, Tisdale Decl. **Exs. A, B**).

Despite Defendant's contention that the Verified Amended Complaint does not allege physical damage, paragraph 26 pleads that the Vessel encountered significant main and auxiliary engine issues, requiring extraordinary efforts to avoid catastrophe.  At the end of paragraph 26, Plaintiffs allege that had they not taken these actions, serious **additional** damage to the Vessel, and its equipment would have been sustained.  (*Id.* at ¶ 26) (emphasis added).

Assuming Glencore is correct that ISO 8217:2017 does not require detailed testing (ECF No. 28, p. 4), this does not change the fact that the bunkers Glencore provided to Plaintiffs and numerous other parties in Singapore were off-specification. ISO 8217:2017 requires them to be free from any material at a concentration which causes the fuel to be unacceptable for use.  The bunker confirmation note stipulated they be the product of petroleum refining and free of harmful products, all of which Glencore violated.  The invoice amount of the subject bunkers was $2,176,419.26.  Glencore's suggestion that it should somehow be excused for its conduct because the price of the bunkers was "economical" (ECF No. 28, p. 1, 5) is ludicrous.  Surely, Glencore does not maintain that it (or any bunker supplier) may be excused for providing dangerously off-specification fuel and misrepresenting their quality because the buyer negotiated a favorable price.  In fact, this argument supports the conclusion that Glencore had a fraudulent motive for selling bad bunkers to dozens of unsuspecting vessel owners.

Glencore's assertion that Plaintiffs "requested" that the general terms and conditions ("GTC") apply to the sale is also wrong.  The GTC are boilerplate terms and conditions which can be made available "upon request."  (Behmke Decl. **Ex. A**, ECF No. 31-1, p. 4 of 5).  Plaintiffs had no input in their drafting.

Plaintiffs commenced this action on September 20, 2022 with the filing of their Complaint. Defendant does not contest service of process, personal jurisdiction, or venue, presumably because its GTC provide for venue and jurisdiction in this Honorable Court. On December 14, 2022, Defendant informed the Court that it intended to file a motion to dismiss the Complaint. On December 23, 2022, Plaintiffs amended their Complaint which, *inter alia*, added Andros as a Plaintiff. (ECF No. 17).   On January 25, 2023, the Court conducted an initial pretrial conference/pre-motion conference.  The Court set a briefing schedule for the instant motion to dismiss and directed the parties to submit a Proposed Case Management Plan which was entered on January 31, 2023. (ECF No. 25).  The only point of contention between the Parties on the Proposed Case Management Plan was the length of time for document production.  Glencore filed its motion to dismiss with supporting memorandum of law, supporting declaration, and letter motion to seal an exhibit to the declaration on February 14, 2023. (ECF Nos. 27-31).

On February 17, 2023, Plaintiffs served their first request for production of documents, interrogatories, and initial disclosures on the Defendant. Among the documents sought in the requests for production are Defendant's protocols and quality assurance procedures employed before delivering bunkers to a vessel.  (Tisdale Decl. **Ex. D**, ¶33). This is significant because Defendant accuses Plaintiffs of not having pled facts relating to these protocols, which are solely within Defendant's possession and control.   Defendant also served requests for production containing 86 separate demands on Plaintiffs.  (Tisdale Decl. **Ex. E**).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 74 (2d Cir. 2023). Although a complaint need not contain "detailed factual allegations," it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the court "must accept as true all well-pl[eaded] factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

## ARGUMENT

### POINT ONE

### GLENCORE'S ARGUMENTS ARE NOT SUSCEPTIBLE TO RESOLUTION ON A RULE 12 MOTION

#### A. Breach of Contract

Defendant argues that Plaintiffs' breach of contract claim should be dismissed because their claimed damages are barred by the Glencore GTC. (ECF No. 28, pp. 11-14).

As Defendant is aware from the Amended Verified Complaint, Plaintiffs allege that Glencore acted in a grossly negligent manner and/or made fraudulent misrepresentations in connection with the sale of the bunkers. (ECF No. 17 Counts 5 and 6). A contracting party acting in bad faith may be estopped from asserting a limitation on damages. *President Container Group II, LLC v. Systec Corporation*, 467 F. Supp.3d 158, 170 (S.D.N.Y. 2020)(citation omitted). Bad

faith is normally treated as a fact question which cannot be resolved on a Rule 12(b)(6) motion to dismiss. *Id*. (cleaned up). In *President Container Group*, the plaintiff alleged circumstantial facts including reassurances that products to be provided under the contract would meet the plaintiff's expectations and improve upon efficiency, which nudged the assertion that the defendant acted in bad faith across the line from conceivable to plausible. *Id*. (citing *Iqbal*, 556 U.S. at 680). Here, Glencore made multiple false representations of present fact (*i.e.*, the quality of the bunkers). This is more than enough to survive a Rule 12 motion.

### B.    Gross Negligence

Glencore agrees that its GTC and Sale Contract are governed by New York and/or federal maritime law. (ECF No. 28, p. 5). After confirming under New York law, that a party may not insulate itself from damages caused by "grossly negligent conduct," the First Department held that where a plaintiff alleged a failure to employ underwriting standards, verify information, ignored contractual obligations, and disregarded known or obvious risks, this was sufficient to state a claim for gross negligence at the pre-answer motion stage. *Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Cap. Holdings LLC*, 143 A.D.3d 1, 8, 36 N.Y.S.3d 458 (2016); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc*., 136 F. Supp. 2d 253, 256-57 (S.D.N.Y. 2001)(citing *Gentile v. Garden City Alarm Co.,* 147 A.D.2d 124, 130, 541 N.Y.S.2d 505, 509 (2d Dep't 1989)("The issue of gross negligence is a question of fact for a jury to determine"). In *Travelers*, the court concluded that the plaintiff alleged sufficient facts to state a claim for gross negligence where those allegations included a failure to inspect truss welds, failure to notice discrepancies between drawings and the work performed, and a failure to confirm that the steel trusses were actually tested. (*Id*.) Whether these failures rise to the level of reckless disregard for the rights of others, is a question properly reserved for a jury.

Federal courts also recognize that gross negligence claims are generally not subject to adjudication by a motion to dismiss. *See e.g. Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 65 (2d Cir. 2012)(noting that at the motion-to-dismiss stage, drawing all inferences in plaintiff's favor, the plaintiff plausibly alleged that defendant's gross negligence exposed plaintiff to greater risk that it would lose its entire investment than would have otherwise been the case); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.,* 405 F. Supp. 3d 408, 449–50 (W.D.N.Y. 2019)(allegations of knowing removal of odor and emission control mechanisms and a slow response to the community's complaints was sufficient to defeat a motion to dismiss a claim for gross negligence); *Lundy v. Wells Fargo Bank N.A.*, No. 08 CIV. 8715 (BSJ), 2011 WL 13128267, at *5 (S.D.N.Y. Mar. 10, 2011) ("Plaintiff's claim for gross negligence also presents questions of fact inappropriate for resolution at the motion to dismiss stage.").

### C.    Fraud

Although the circumstances constituting fraud must be stated with particularity, Rule 9(b) provides that fraudulent intent may be averred generally, if the complaint provides a factual basis which gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth. *Friar v. Wyndham Vacation Resorts, Inc.,* No. 20-CV-2627 (JPO), 2021 WL 1062615, at *2 (S.D.N.Y. Mar. 19, 2021) (quoting *Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013)).

Here, the statements in the bunker confirmation and the delivery receipt were fraudulent because they were present representations of fact by Glencore in Singapore.  (ECF No. 17. ¶ 12; **Exs. A-C** to Behmke Decl. (ECF No. 31).  These statements, upon which Plaintiffs relied, were fraudulent because Glencore, as the seller of the bunkers, is chargeable with knowledge of the

content of the product.  Further, as early as February 2022, Glencore had reason to believe that bunkers being supplied from Singapore contained unacceptable levels of contaminants.  (ECF No. 17,  ¶ 25, Tisdale Decl. **Exs. A-B**).  This alone should have caused Glencore, one of the largest marine fuel suppliers in the world, to at least investigate the presence of these contaminants which have the potential to cause catastrophic damage to vessels before in fact supplying them to such a large number of vessels.  We also know that the Singapore authorities sanctioned Glencore for knowingly selling contaminated bunkers shortly after the stem in question because Glencore continued to sell them even after its own internal investigation established the bunkers were contaminated. (Tisdale Decl., **Ex. A**).

## POINT TWO

### GLENCORE'S PURPORTED CONTRACTUAL LIMITATIONS ARE UNENFORCEABLE

**A.    Plaintiffs do not Seek "Consequential Damages"**

Defendant mischaracterizes Plaintiffs' claimed damages as "consequential."  (ECF No. 28, p. 14).   Both the New York UCC and the Restatement (Second) of Contracts define expenses incurred in mitigation as incidental, rather than consequential damages.  N.Y. U.C.C. Law § 2-715 (defining "incidental damages" as those resulting from the seller's breach including expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach); Restatement (Second) of Contracts § 347 cmt. C (defining incidental losses as those incurred in a reasonable effort, whether successful or not, to avoid loss).

Plaintiffs' Verified Amended Complaint establishes that the damages claimed were incurred in mitigation of the harm caused by the Defendant's breaches and commission of torts. As such, they are not consequential and do not represent lost profits.

**B.      Even if Considered "Consequential," the GTC Limitation is Unconscionable**

Contract provisions limiting consequential damages are not enforced if they are unconscionable. *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 476–77, (S.D.N.Y. 2010); *Laidlaw Transp. Inc. v. Helena Chemical Co.*, 255 A.D. 2d 869, 870 (4th Dep't. 1998).

Whether the clause is unconscionable is a question of law to be determined by analyzing both the procedure by which the contract was formed and the substantive terms of the agreement. *See McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1198 (2d Cir. 1995). An unconscionable contract has been characterized as one that "is ... grossly unreasonable ... in the light of the mores and business practices of the time and place." *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 10, 534 N.E.2d 824 (1988).

Glencore's GTC purport to limit recoverable damages to $300,000 or to an exclusive remedy of replacement of the fuel.  (ECF 28, pp. 11-14). Here, the bunkers delivered to the Vessel cost Plaintiffs $2,176,419.26.   In its defective condition, its value was $0.00.  When viewed considering the potential damage to human life, the environment, and the Vessel, this limitation is grossly inadequate particularly considering that Glencore was in the exclusive position to know the bunkers' content and continued to deliver the bunkers after learning of the contaminants.

Glencore seeks to limit its liability for the mitigation expenses (incidental, not consequential damages) when the common law and contract specifically require that Plaintiffs

mitigate their damages[2]. (ECF No. 28, p. 14).  None of these damages would have been incurred

had Defendant made any effort to confirm that the bunkers it supplied to Plaintiffs were compliant

with the contract terms and with international standards.  Enforcement of the exclusive remedy

provision would be even less reasonable.

At the very least, questions of fact as to the reasonableness of Glencore's purported

limitation of liability exist, requiring the denial of the motion to dismiss.

### C.       Enforcement of the Limitation of Liability Would Fail of Its Essential Purpose

Glencore cites NY U.C.C. § 2-719 for the proposition that any claim for damages in excess

of the $300,000 liability should be dismissed (ECF No. 28, p. 14).

Here again, it is well settled that "whether circumstances have caused a limited remedy to

fail of its essential purpose ... is a question of fact for the jury and one necessarily to be resolved

upon proof of the circumstances occurring after the contract is formed." *Cayuga Harvester, Inc.

v. Allis–Chalmers Corp.,* 95 A.D.2d 5, 10–11, 465 N.Y.S.2d 606 (1983) (cleaned up); *see

also Laidlaw Transp. Inc. v. Helena Chem. Co.,* 255 A.D.2d 869, 869, 870, 680 N.Y.S.2d 365

(1998); *Scott v. Palermo,* 233 A.D.2d 869, 869–870, 649 N.Y.S.2d 289 (1996); *Belfont Sales Corp.

v. Gruen Indus. Inc.,* 112 A.D.2d 96, 98–99, 491 N.Y.S.2d 652 (1985). The plaintiff need not make

a showing of dilatory or negligent conduct.  *See Cayuga Harvester Inc.,* 95 A.D.2d at 11. "Rather,

[UCC 2–719(2)] is to apply whenever an exclusive remedy, which may have appeared fair and

reasonable at the inception of the contract, as a result of later circumstances, operates to deprive a

---

[2] The injured party bears an obligation to make reasonable efforts to mitigate its damages and
failure to do so may cause a court to lessen the recovery. *APL Co. PTE v. Blue Water Shipping
U.S. Inc.,* 592 F.3d 108, 111 (2d Cir. 2010)(applying New York law); *M. Golodetz Exp. Corp. v.
S/S Lake Anja,* 751 F.2d 1103, 1112, 1985 A.M.C. 891 (2d Cir. 1985)(stating that federal
admiralty law applies the venerable rule which requires a plaintiff to mitigate its damages).

party of a substantial benefit of the bargain." *Id.; see also Roneker v. Kenworth Truck Co.,* 944 F. Supp 179, 184 (W. D. N.Y. 1996).

Here, application of the $300,000 limitation provision in the Glencore GTC would deprive Plaintiffs of any benefit of the bargain.  Defendant argues that because Plaintiffs burned some of the fuel "without damage," this somehow deprives Plaintiffs of their right to discovery in this matter.  (ECF No. 28, p. 12).  Multiple times in its memorandum, Glencore fails to acknowledge this verbatim quote from Paragraph 26 of the Amended Verified Complaint, "the Vessel still encountered significant main and auxiliary engine issues requiring extraordinary effort from the ship's crew to avoid catastrophe.   The Vessel was unable to consume the Glencore bunkers any further." (ECF No. 17, ¶26).  At the pleading stage, Plaintiffs are not required to allege every aspect of the efforts undertaken by the Vessel's crew to mitigate.  This bald attempt to deprive Plaintiffs of their right to discovery fails.

Defendant's reliance upon *Solomon v. Canon USA Inc.* is misplaced since that case involved a lawsuit commenced by a buyer of a camera from a non-party store against the manufacturer of the camera.  31 Misc.3d 30, 920 N.Y.S.2d 565 (1st Dep't 2010).  In addition to the fact that the plaintiff-camera buyer was not in privity with the defendant-seller, the plaintiff's issue with the camera lenses while taking photographs is a far cry from the scale of the damages and potential damages sustained by Plaintiffs in this case.

### D.    Glencore is not Permitted to Release Itself from Grossly Negligent Conduct

It is the public policy of the State of New York "that a party may not insulate itself from damages caused by grossly negligent conduct." *Trump Int'l Hotel & Tower v. Carrier Corp.,* 524 F. Supp. 2d 302, 314–15 (S.D.N.Y. 2007); *Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Cap. Holdings LLC*, 143 A.D.3d 1, 8, 36 N.Y.S.3d 458 (2016) (citing

*Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554, 593 N.E.2d 1365 (1992)).  This applies equally to contract clauses exonerating a party from all liability as well as clauses limiting damages.  The same is true under federal maritime law.  *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 321, 2003 A.M.C. 289 (E.D.N.Y. 2003) (recognizing that it is well settled that a party cannot disclaim liability for gross negligence).

An exculpatory agreement, no matter how unqualified its terms, will not exonerate a party from liability under all circumstances.  Under announced public policy, it will not apply to exemption of willful or grossly negligent acts.  *See e.g.*, *Kalisch–Jarcho v. City of New York,* 58 N.Y.2d 377,  384–85, 461 N.Y.S.2d 746, 448 N.E.2d 413(1983)(citations omitted).

More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.  *Kalisch-Jarcho, Inc.*, 58 N.Y.2d at 384–85 (citing *Matter of Karp v. Hults,* 12 A.D.2d 718, 209 N.Y.S.2d 128, *affd.* 9 N.Y.2d 857, 216 N.Y.S.2d 99, 175 N.E.2d 465).  The facts alleged here smack of a bad faith, reckless indifference to Plaintiffs' rights.

### POINT THREE

### THE ECONOMIC LOSS RULE
### DOES NOT BAR PLAINTIFFS' RECOVERY

#### A.    The Economic Loss Rule

Defendant argues that the economic loss rule of *East River S.S. Corp v. Transamerica Delaval Inc.*, 476 U.S. 858 (1986) bars Plaintiffs' negligence (Count II) and strict liability (Counts II-III) claims.  (ECF No. 28, p. 14).  However, by its terms, *East River* held that a manufacturer in

14

a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself. *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871 (1986).  Here, Plaintiffs do not argue that Glencore's contaminated fuel injured itself.

In *Am. Dredging Co.*, the plaintiff sought recovery for lost business opportunities it suffered because its ships were out of commission for the period in which it awaited replacement fuel. *Am. Dredging Co. v. Plaza Petroleum Inc.,* 845 F. Supp. 91, 93, 1993 A.M.C. 2755 (E.D.N.Y. 1993).  Defendant's reliance upon this decision is misplaced because Plaintiffs do not seek "lost business opportunities."  Rather, they seek reimbursement for the mitigation expenses they were forced to incur to prevent catastrophic harm because of the defective fuel Glencore delivered.

The Second Circuit's decision in *Am. Petroleum & Transp., Inc. v. City of New York* provides a thorough history of the economic loss rule at the Supreme Court and Second Circuit. 737 F.3d 185, 186 (2d Cir. 2013) (Newman, J.).  *Am. Petroleum & Transp., Inc.* observes that the *Robins Dry Dock* case has been "overread" and expresses the possibility of a "fact-specific" exception to the rule.  *Id.* at 196-197.  Should the economic loss rule apply here, which Plaintiffs deny, the damages Plaintiffs seek are subject to an exception.

In fact, the Fifth Circuit recognizes an exception to the economic loss rule for acts taken in mitigation to prevent permanent physical damage. *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 213 (5th Cir. 2011); *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.,* 71 F.3d 198 (5th Cir.1995)[3].  In *Catalyst Old River Hydroelectric Ltd. P'ship*,

---

[3] On at least one occasion, a court in this Judicial District has referenced the mitigation exception recognized in the Fifth Circuit.  *Gas Nat. SDG S.A. v. United States*, 2007 A.M.C. 1058, 2007 WL 959259, at *5 (S.D.N.Y. Mar. 22, 2007), *aff'd*, 2008 A.M.C. 2992, 2008 WL 4643944 (2d Cir. Oct. 21, 2008)(Batts, J.).  However, the *Gas Nat. SDG* court found that the exception did not apply for reasons not germane to this case.

in response to a casualty, the plaintiff reduced the channel's water flow, shut down six of its eight turbines and reduced the remaining two to minimum power. Thus, the physical recovery effort to secure and remove the barge from the intake channel required a reduction in the flow of water necessary for the turbines to operate properly and generate the power they were designed to generate. *Catalyst Old River Hydroelectric Ltd. P'ship*, 639 F.3d at 213. Citing *Corpus Christi Oil & Gas Co.,* the Fifth Circuit held that without plaintiff's acts of mitigation, it would have "run the unacceptable risk of incurring physical damage to its hydroelectric station." *Id.* Accordingly, the plaintiff's economic losses should have been allowed. *Id.*

Whether termed as "avoidable consequences" under New York law or mitigation, Plaintiffs were **required** to take reasonable steps to mitigate the consequences of the supply of defective bunkers and could not passively wait for the harm to materialize. *See e.g. Sackin v. Transperfect Global, Inc*., 278 F. Supp.3d 739, 749 (S.D.N.Y. 2017)(emphasis added). In *Sackin*, this Court denied a multi-ground motion to dismiss based partly on the economic loss rule because the tort claim may be brought despite the rule if a plaintiff alleges that a legal duty independent of the contract has been violated. *Id.* at 749-50.[4]

This Court should reach the same result since Plaintiffs have alleged breach of an independent duty and the damages which Plaintiffs incurred were necessary to prevent catastrophic harm and paled in comparison to the potential damages which would have been realized if the defective fuel disabled the Vessel's engine and left the crew exposed to potentially violent seas without propulsion. If Defendant has its way, the law would perversely incentivize a similarly situated plaintiff to do nothing and wait for catastrophic harm to materialize because the economic

---

[4] The Court recognized the untenable "Catch-22" the plaintiffs would face, noting that plaintiffs were required to take reasonable steps to mitigate rather than to wait for the full consequences of defendants' negligence to take hold. *Id.*

loss rule categorically bars any damages for mitigation efforts taken to head these damages off at the pass.

**B.      The Economic Loss Rule does not Bar Claims of Intentional / Fraudulent Misrepresentation**

Courts in this District have "routinely" permitted fraud and contract claims to proceed in tandem for purposes of recovering pure economic loss.  *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265, 278 (S.D.N.Y. 2004).  In other words, the economic loss rule is not presumed to extend to fraud claims.  *Id.*  Courts have held that the economic loss doctrine does not bar fraud claims.  *See e.g. Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.,* 557 F. Supp. 3d 381, 397, n. 12 (E.D.N.Y. 2021)(collecting cases).  The economic loss rule does not bar any of Plaintiffs' claims.

<u>**POINT FOUR**</u>

**PLAINTIFFS' AMENDED VERIFIED
<u>COMPLAINT STATES A CLAIM FOR FRAUD</u>**

**A.      Plaintiffs Satisfy the Rule 9 Pleading Requirements for Fraud**

Although the circumstances constituting fraud must be stated with particularity, Rule 9(b) provides that fraudulent intent may be averred generally, if the complaint provides a factual basis which gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth. *Id.*  However, a plaintiff can establish a strong inference of fraudulent intent "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. General Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994); *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F. Supp. 2d 265, 280, 2004 WL 2348093 (S.D.N.Y. 2004). The "strong inference" requirement is tempered by the recognition that a plaintiff "cannot be expected to plead

a defendant's actual state of mind[,]" and thus need not allege the defendant's requisite intent with any great specificity.  *EED Holdings,* 387 F. Supp. 2d at 280.

A "strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Hoffmann v. Kashi Sales, L.L.C.,* 21 CV 9642 (VB), 2022 WL 17823171, at *7 (S.D.N.Y. Dec. 20, 2022) (citing *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290–91 (2d Cir. 2006)). For example, a plaintiff may establish fraudulent intent by "offer[ing] facts to show that [defendant] had both a clear opportunity and a strong financial motive to" engage in fraud, as well as defendant's actual knowledge of fraud. *Wight v. BankAm. Corp.,* 219 F.3d 79, 92 (2d Cir. 2000).

A plaintiff alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Friar v. Wyndham Vacation Resorts, Inc.,* No. 20-CV-2627 (JPO), 2021 WL 1062615, at *2 (S.D.N.Y. Mar. 19, 2021); *Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

Glencore's statements regarding the quality of the fuel provided to the Vessel in the Bunker Confirmation Note and the Bunker Delivery Notes were false. The totality of circumstances establishes that Glencore intentionally supplied this false information to many parties, including Plaintiffs.  The Singapore MPA revoked Glencore's bunkering license for two months because even after Glencore knew of the defective condition of the fuel, they continued to supply this product to vessels.  (Tisdale Decl., **Ex. A**).  This false information induced Plaintiffs to enter the agreement and permit these bunkers to be delivered to its Vessel.  Based on industry reports of

multiple vessels encountering problems due to defective bunkers stemmed in Singapore before March 10, 2022 and the over 200 vessels stemmed with contaminated bunkers, 80 of which encountered operational difficulties arising out of the early 2022 Singapore bunker contamination issue, Glencore knew these representations were false.  (See Tisdale Decl., **Exs. A-B**; ECF No. 17).  Plaintiffs' allegations establish the plausibility necessary to survive this motion.

      **B.**    **Plaintiffs have Pled the Substantive Elements of Fraud**

To sustain a claim for fraud under New York law, a plaintiff must adequately establish: (1) representation of a material fact; (2) falsity; (3) scienter; (4) reasonable reliance; and (5) injury. *Koch v. Greenberg*, No. 07CIV.9600BSJDF, 2008 WL 4778813, at *6 (S.D.N.Y. Oct. 31, 2008) (cleaned up); *Friar*, 2021 WL 1062615, at *3 (S.D.N.Y. Mar. 19, 2021).

      **1.**    **Representation of a Material fact**

Plaintiffs received a Bunker Confirmation Note confirming specifications of the fuel.  Later that day, Glencore confirmed the terms by a separate email message.  (ECF No. 17 ¶ 12).  After the bunkers were delivered to the Vessel, Glencore issued a Bunker Delivery Note which again confirmed that the bunkers were compliant with MARPOL and ISO 8217:2017. (ECF No. 17, ¶ 14; Behmke Decl. **Ex. C**, ECF No. 31-3).  These representations concerned the very heart of the transaction: The quality and content of the bunkers.

      **2.**    **Falsity**

It was not until March 20, 2022 that Plaintiffs received a copy of the laboratory analysis of the drip sample. This analysis demonstrated that the bunker sample contained elevated levels of contaminants. (ECF No. 17, ¶ 18). Plaintiffs then arranged a further analysis by a certified laboratory which established that the bunkers were contaminated with 12 different organic chlorides at a concentration of 0.45% mass. (ECF No. 17, ¶ 19). These compounds do not originate

naturally in the petroleum feed stocks permitted under ISO 8271:2017. (ECF No.17, ¶ 20).  There can be no dispute that Glencore's representations of the bunkers' quality were false.

### 3.    Scienter

Glencore[5] has extensive prior experience with chloro-contaminants and the disastrous ramifications they can have for vessels.  (ECF No. 17, ¶¶ 16, 17).  In fact, Defendant has been engaged in litigation concerning these issues in the past.  (*Id.*)  The "Houston Problem" as Glencore phrases it[6] is another event which underscores Glencore's knowledge of the potentially serious consequences of supplying ocean-going vessels with contaminated fuel.  *See e.g.*, (ECF No. 28, pp. 8, 11, 14, 22).  Regarding the "2022 Singapore Problem," other vessels in Singapore[7] reported off-specification bunkers before the stem of the SERIFOS, industry sources warned of the problem in February of 2022, and at least one laboratory issued an advisory about the problem eleven (11) days before this stem. (ECF No. 17, ¶25).  Despite this information, Glencore continued to supply many vessels with these bunkers including the SERIFOS.  (ECF No. 17, ¶¶25, 67; Tisdale Decl. **Exs. A-B**).  We know based on the MPA suspension of Glencore that Glencore was guilty of fraud as of March 20, 2022.  Based on the number of complaints of contaminated bunkers Glencore necessarily received before March 20, 2022, it is easy to infer that Glencore knowingly supplied contaminated fuel to the SERIFOS or intentionally turned a blind eye to the problem. These facts are sufficient to survive a Rule 12(b)(6) motion because they nudge the Plaintiffs' claim from conceivable to plausible.

Importantly, when the facts are peculiarly within the opposing party's knowledge, the requirements of Rule 9(b) are relaxed. *Drexel Burnham Lambert Grp., Inc. v. Microgenesys, Inc.,*

---

[5] The Defendant is 100% owned by its parent Glencore Ltd.  (*See* Tisdale Decl. **Ex. C**)
[6] ECF No. 28, pp. 7-8.
[7] Glencore supplies a large percentage of the bunkers stemmed in Singapore and has a significant market share.

775 F. Supp. 660, 664–65 (S.D.N.Y. 1991); *Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). And allegations may be based on information and belief so long as specific facts are alleged to support a "strong inference" of fraud. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990).

As of the filing of this Memorandum of Law, Plaintiffs' initial requests for production of documents and interrogatories remain outstanding.  Since what Glencore knew and when they knew it are within the exclusive province of the Defendant, this motion must be denied.

Unlike in a securities fraud case[8], where plaintiffs must plead scienter "with particularity" (*see* 15 U.S.C. § 78u-4(b)(2)(A)), a plaintiff alleging common law fraud need only satisfy Rule 9(b), under which "fraudulent intent may be averred generally." *Schneider*, 2013 WL 1386968, at *4 (internal quotation marks and citation omitted). In a common law fraud action, scienter "can be pleaded by alleging motive and clear opportunity, or by alleging facts constituting strong circumstantial evidence of conscious behavior or recklessness on the part of defendants." *G-I Holdings, Inc. v. Baron & Budd*, No. 01-CV-0216, 2003 WL 193502, at *12 (S.D.N.Y. Jan. 29, 2003) (citing *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995)). To plead motive, a plaintiff must "allege facts indicating 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures.'" *Id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)). "To plead opportunity, one must allege facts that demonstrate that the defendant is well positioned to carry out the fraudulent transaction." *Id.* (internal quotation marks and citation omitted). Here, Plaintiffs have adequately alleged both motive and opportunity.

---

[8] Defendant relies in error on several securities fraud cases in its moving memorandum. *See e.*g. *South Cherry Street v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009); *Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996).

Glencore supplied numerous (possibly over 100) ocean-going vessels with contaminated bunkers it deemed "economical," a euphemism for "cheap" (ECF No. 28, pp, 1, 5), and presumably made millions of dollars of profit in the process.  Had Plaintiffs not negotiated a cheap price, would Glencore then have stemmed uncontaminated, compliant bunkers?  Glencore had a clear opportunity and a strong financial motive to engage in fraud. *See Wight v. BankAm. Corp.,* 219 F.3d 79, 92 (2d Cir. 2000).

### 4.    Reasonable reliance

Plaintiffs relied on these representations from Defendant.  (Count V, ¶ 61).  They had no choice since a full laboratory analysis cannot be performed on the bunkers in the time from when an order is confirmed and when the bunkers are stemmed to the Vessel.  (ECF No. 17, ¶18).

### 5.    Injury

Plaintiffs allege that because of the delivery of off-specification bunkers, they suffered monetary damages.  (ECF No. 17, ¶ 28).  If Plaintiffs did not incur these costs, the resulting harm would have been far greater.

Defendant's remaining authorities are easily distinguishable.  *See e.g., Matana v. Merkin*, No. 13 CIV. 1534 PAE, 2014 WL 426857, at *3 (S.D.N.Y. Feb. 4, 2014)(rejecting argument that omission of an unknown fact the ignorance of which is the product of recklessness, can be the basis for a fraud claim under New York law); *Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963, 965, 752 N.Y.S.2d 746 (2002)(plaintiffs have not alleged any facts suggesting that defendant was aware of the alleged problems associated with the foregoing transactions).

**C.       Plaintiffs' Fraud claim is not Duplicative of Their Breach of Contract Claim**

The fraud claim is not subject to dismissal as duplicative of the breach of contract claim. Part of the rationale for striking duplicative fraud claims is that, often, there is no difference between contract damages and fraud damages. *VTech Holdings Ltd. V. Lucent Technologies, Inc*., 172 F.Supp.2d 435, 440-41 (S.D.N.Y. 2001); *EED Holdings v. Palmer Johnson Acquisition Corp*., 387 F. Supp.2d 265, 276 (S.D.N.Y. 2004)(denying motion to dismiss fraud claim where an alleged misrepresentation of the present condition of the defendant's finances and operations were actionable as fraud and recognizing that a misrepresentation of present fact can be collateral to a contract and can support a separate fraud claim).

Under New York law, a breach of contract may give rise to a tort claim when a legal duty independent of the contract itself has been violated. *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58, 2012 WL 3156441 (2d Cir. 2012)(citing *Clark–Fitzpatrick v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). Such a "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Id.* Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct. *See Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 898–99 (2d Cir.1980) (citing *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)).

Defendant vehemently argues in its motion papers that under its GTC, Plaintiffs' damages are limited to $300,000 or to replacement of the fuel.  (ECF No. 28, pp. 12-14).  Since extra-contractual claims such as intentional misrepresentation / fraud are not subject to a contractual limitation, these damages are necessarily different from those to which Plaintiffs are entitled in

Defendant's own view. The damages which Plaintiffs necessarily incurred because of Defendant's delivery of vastly off-specification bunkers and in mitigation of same are separate and apart from the damages allegedly subject to the GTC.  Therefore, the fraud claim is not duplicative.

### POINT FIVE

### PLAINTIFFS' GROSS NEGLIGENCE CLAIM IS LEGALLY SUFFICIENT

On a motion to dismiss, a claim for gross negligence will be sustained if the plaintiff alleges facts plausibly suggesting that the defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. *AT & T v. City of New York,* 83 F.3d 549, 556 (2d Cir. 1996). Recklessness in the context of a gross negligence claim means "an extreme departure from the standards of ordinary care," such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *AMW Materials Testing, Inc. v. Town of Babylon,* 584 F.3d 436, 454 (2d Cir.2009) (internal quotation marks omitted); *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC,* 692 F.3d 42, 61–62 (2d Cir. 2012).

Gross negligence is defined as "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Travelers Indem. Co. of Conn. v. Losco Grp., Inc*., 136 F. Supp. 2d 253, 256–57 (S.D.N.Y. 2001) (citing *Sommer,* 79 N.Y.2d at 550–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365; *see also Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.,* 212 A.D.2d 577, 578, 622 N.Y.S.2d 740 (1995); *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd,* 81 N.Y.2d 821, 823–24, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993)).  Gross negligence is conduct of an aggravated character which discloses a failure to exercise even slight diligence, and a "disregard of the consequences which may ensue from the act, and indifference to the rights of others." *Travelers Indem. Co. of Conn.*, 136 F. Supp. 2d at 256 (citing *Civil Service Empl. Ass'n, Inc. v. Public Empl. Rel. Bd.,* 132 A.D.2d 430, 522 N.Y.S.2d 709 (3d Dep't 1987) (citation omitted)).

Defendant's citation to *Omegra Shipping Pte Ltd. of Singapore v. World Fuel Services (Singapore) Pte Ltd.* is misplaced since that case held plaintiff's gross negligence claim to be insufficient under inapplicable Florida which has different requirements for gross negligence than New York law.   Case No. 22-20531, ECF No. 43 (S.D.Fla. August 17, 2022)(no Westlaw cite available).

The *AGIP Petroleum Co.* case cited by Defendant was decided on summary judgment and denied the motion as to compensatory damages resulting from gross negligence or willful misconduct.   *AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,* 920 F. Supp. 1330, 1341–42 (S.D. Tex. 1996).

Defendant's reliance on *Curacao Oil N.V. v. Trafigura Pte. Ltd.,* is misplaced since the New York state court motion to dismiss was filed based on documentary evidence and for failure state a cause of action.   67 Misc. 3d 1235(A), 128 N.Y.S.3d 781, 2020 WL 3494685, at *1 (N.Y. Sup. Ct.), *aff'd,* 189 A.D.3d 404, 132 N.Y.S.3d 774 (2020).   The plaintiff in *Curacao Oil N.V.* was not a vessel owner, but was an oil trader and did not allege gross negligence or fraud. Most importantly, the contract in *Curacao Oil N.V.* provided that a designated inspector's determination was "final and binding" for "all purposes."   *Id*. at *2.   Since the plaintiff took issue with the inspector's findings, the court dismissed the action.

Assuming *arguendo* that Defendant was unaware that the bunkers were contaminated, the cost to perform a GCMS test is approximately $1,000.  (ECF No. 17, ¶17).  When supplying vessels with bunkers priced at several million dollars, $1,000 for a GCMS test pales in comparison.  This alone demonstrates an extreme indifference to the rights of others assuming Glencore was not already aware of the presence of the contaminants.

<u>**POINT SIX**</u>

**GLENCORE'S EXTENSIVE EXPERIENCE
WITH DEFECTIVE BUNKERS BOLSTERS
<u>PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS</u>**

Glencore relies heavily upon two opinions from a single 2021 civil action in this District. *See* (ECF No. 28, p. 14)(citing *VL8 Pool, Inc. v. Glencore Ltd.,* No. 1:20-CV-02053 (ALC), 2021 WL 1152936 (S.D.N.Y. Mar. 25, 2021)("*VL8 I*"); *VL8 Pool, Inc. v. Glencore Ltd.,* No. 20-CV-2053-ALC, 2021 WL 6113981 (S.D.N.Y. Dec. 27, 2021)("*VL8 II*"). However, the *VL8* duo involved different facts, vastly different complaint allegations, and the *VL8* cases themselves reinforce Glencore's state of knowledge as it pertains to this case.

*VL8 I* concerned Glencore Limited, a party with the same corporate ownership and same appearing counsel as the Defendant in this case.  (Tisdale Decl. **Ex. C**).  Notably, the *VL8* plaintiff did not allege either gross negligence or intentional misrepresentation/fraud.  (*VL8*, 1:20-cv-2053, ECF Nos. 1, 21).  Specifically, the court noted that the plaintiff made no allegations regarding when or how Glencore acted recklessly in failing to inform the plaintiff of the issue or how Glencore knew or should have known about the issue at the time of the transaction, or any other relevant time.  *VL8 I* at *3.

The *VL8 I* court concluded that the complaint failed to plead conduct that would render Section 7 (A) of the GTC unenforceable. The court also found that the plaintiff failed to plead any damages, other than consequential damages, and it does not appear that any arguments regarding mitigation, or avoiding the greater harm were made.

Approximately nine months later, in *VL8 II*, the court again dismissed plaintiff's complaint and concluded that the amendments did not sufficiently plead a basis to invalidate the exculpatory clause.  Specifically, Judge Carter held that the new allegations did not suggest that Glencore

engaged in any explicit conduct that was fraudulent, malicious, or prompted by sinister intention. Specifically, the amended complaint did not allege that Glencore deceived anyone, and the court noted that the plaintiff did not allege that Glencore needed to do any more than this initial sampling and testing based on the batch of fuel. The amended complaint identified only two customers out of many other vessels and intermediate suppliers worldwide which obtained fuel from Glencore.

In this case, Plaintiffs have alleged, for example, at paragraph 66 of the Verified Amended Complaint that Glencore received complaints from numerous other ships arising from the consumption of Glencore's early 2022 Singapore bunkers. According to industry news sources, of the approximately 200 vessels supplied, approximately 80 vessels reported operational issues in connection with the bunkers supplied by Glencore and one other bunker seller in Singapore in March of 2022. (MPA Report Tisdale Decl. **Exs. A-B**). This is a far cry from two vessels, as was the case in *VL8*. Additionally, paragraph 25 of the Amended Verified Complaint alleges that numerous bunker fuel testing facilities issued advisory notices about the presence of dangerously high levels of organic chlorides in the fuel Glencore provided. One such report is dated March 1, 2022 and indicates that three ships were already identified at that time as contaminated with bunkers containing organic chlorides. (ECF No. 17, ¶25). Finally, the damages sought herein are incidental damages incurred in mitigating a possible casualty, not consequential damages as was the case in *VL8*. These additional allegations, the *VL8* cases themselves, and the other detailed allegations in the Verified Amended Complaint distinguish this matter from *VL8* and require denial of the motion to dismiss.

**POINT SEVEN**

**SHOULD THE COURT DEEM ANY COUNT LEGALLY INSUFFICIENT,
PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND**

As established *supra*, Defendant's motion to dismiss should be denied in its entirety. However, if the Court concludes that any cause of action is legally insufficient, Plaintiffs respectfully request leave to file a Second Amended Complaint.  FED. R. CIV. P. 15(a)(2)(providing that the Court may grant a party leave to amend its complaint and such leave should be freely granted when justice so requires).

The permissive standard of Rule 15 is consistent with the Second Circuit's strong preference for resolving disputes on the merits.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotations marks and citation omitted).  The Second Circuit has advised that courts should grant plaintiffs leave to amend after a ruling on a motion to dismiss if  the  plaintiffs  satisfy Rule 15. *See Loreley*, 797 F.3d at 169, 189–90 ("hew[ing] to the liberal standard set forth in Rule 15" and finding that the district court improperly denied the plaintiffs' request for leave to amend); *see id.* at 190 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

Plaintiffs therefore respectfully request leave to amend their Complaint to add allegations addressing any legal insufficiencies which the Court may identify.

## <u>CONCLUSION</u>

Plaintiffs' Verified Amended Complaint contains sufficient factual allegations to establish the plausibility of their causes of action.  Therefore, Defendant's motion should be denied in its entirety.

Dated: March 7, 2023
      New York, NY

                Respectfully Submitted,
                Attorneys for Plaintiffs,

    By:         /s/ Thomas L. Tisdale
                Thomas L. Tisdale (TT5263)
                Timothy J. Nast (TN8578)
                Tisdale & Nast Law Offices, LLC
                Chrysler Building
                405 Lexington Ave., 26th Floor
                New York, NY  10174
                Tel:    212-354-0025
                *ttisdale@tisdale-law.com*
                *tnast@tisdale-law.com*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2023, a copy of the foregoing was filed electronically.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

_/s/ Timothy J. Nast_
Timothy J. Nast
