HERBERT SMITH FREEHILLS
 NEW YORK LLP
    Peter J. Behmke
    Michael P. Jones
    Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel:  (917) 542-7600
Fax:  (917) 542-7601
Email:   Peter.Behmke@hsf.com
         Michael.Jones@hsf.com
         Barron.Flood@hsf.com

*Attorneys for Glencore Singapore Pte Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERIFOS MARITIME CORPORATION and ANDROS MARITIME AGENCIES LTD,<br><br>                                    Plaintiffs,<br><br>vs.<br><br>GLENCORE SINGAPORE PTE LTD.,<br><br>                                    Defendant | Case No. 1:22-cv-08012 (LGS) |

**GLENCORE SINGAPORE PTE LTD.'S REPLY IN FURTHER
SUPPORT OF MOTION TO DISMISS AMENDED VERIFIED COMPLAINT**

# **TABLE OF CONTENTS**

                                    **Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

REPLY .................................................................................................................................................. 1

ARGUMENT ........................................................................................................................................ 1

I.  The Breach of Contract Claim (Count I) Should Be Dismissed .......................................... 1

   A.  The Sole Remedy Provision Requires Dismissal of the Contract Claim ................ 1

      1.  The Sole Remedy Clause Cannot Be Avoided by Gross Negligence, and the Pleaded Facts Do Not Establish Fraudulent or Intentional Misconduct ............................. 1

      2.  Plaintiffs Have Failed to Establish Unconscionability ................................ 3

   B.  The Consequential Damages Bar Requires Dismissal of the Contract Claim ................................................................ 4

   C.  The $300,000 Liability Cap Is Enforceable ............................................................. 5

II.  The Negligence and Strict Liability Claims (Counts II-IV) Should Be Dismissed ............. 5

III.  The Fraud Claim (Count V) Should Be Dismissed ............................................................. 7

   A.  The Fraud Claim Is Duplicative of the Contract Claim .......................................... 7

   B.  The Pleaded Facts Fail to Establish an Intent to Defraud ....................................... 8

IV.  The Gross Negligence Claim (Count VI) Should Be Dismissed ....................................... 11

   A.  The Gross Negligence Claim Is Barred by the Economic Loss Rule .................... 11

   B.  The Pleaded Facts Do Not Establish Gross Negligence ....................................... 12

V.  The Amended Complaint Should Be Dismissed With Prejudice ....................................... 13

CONCLUSION .................................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIP Petrol. Co. v. Gulf Island Fabrication, Inc.*,
 920 F. Supp. 1330 (S.D. Tex. 1996) ................................................................................... 11

*Am. Dredging Co. v. Plaza Petrol. Inc.*,
 845 F. Supp. 91 (E.D.N.Y. 1993) ......................................................................................... 8

*Amron v. Yardain, Inc. Pension Plan*,
 2019 U.S. Dist. LEXIS 210096 (S.D.N.Y. Dec. 5, 2019) ................................................... 10

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
 692 F.3d 42 (2d Cir. 2012) ................................................................................................... 2

*Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.*,
 639 F. 3d 207 (5th Cir. 2011) ........................................................................................... 6, 7

*Chill v. Gen. Elec. Co.*,
 101 F.3d 263 (2d Cir. 1996) ................................................................................................. 9

*Colpitts v. Blue Diamond Growers*,
 527 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................................. 9

*Computerized Radiological Servs., Inc. v. Syntex Corp.*,
 595 F. Supp. 1495 (E.D.N.Y. 1984) ..................................................................................... 5

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*,
 71 F.3d 198 (5th Cir. 1995) .............................................................................................. 6, 7

*Curacao Oil NV v. Trafigura Pte Ltd.*,
 2020 N.Y. Misc. LEXIS 2902 (Sup. Ct. N.Y. Cty. Feb. 3, 2020) ....................................... 11

*Deutsche Lufthansa AG v. Boeing Co.*,
 2007 U.S. Dist. LEXIS 9519 (S.D.N.Y. Feb. 2, 2007) ....................................................... 12

*DynCorp v. GTE Corp.*,
 215 F. Supp. 2d 308 (S.D.N.Y. 2002) .................................................................................. 8

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
 476 U.S. 858 (1986) .................................................................................................. 5, 7, 11

*FPP, LLC v. Xaxis US, LLC*,
 764 F. App'x 92 (2d Cir. 2019) ............................................................................................ 8

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y. L.L.C.*,
 405 F. Supp. 3d 408 (W.D.N.Y. 2019) ................................................................................ 2

*Gentile v. Garden City Alarm Co.*,
   147 A.D.2d 124 (2d Dep't 1989) ................................................................................. 2

*Green Star Energy Sols., LLC v. Edison Props., LLC*,
   2022 U.S. Dist. LEXIS 196738 (S.D.N.Y Oct. 28, 2022) ............................................. 9

*Hoffman* v. *Kashi Sales, L.L.C.*,
   2022 U.S. Dist. LEXIS 229070 (S.D.N.Y. Dec. 20, 2022) .......................................... 9

*Howe v. Ethicon, Inc.*,
   2022 U.S. Dist. LEXIS 117292 (S.D.N.Y. June 27, 2022) ........................................ 12

*In re Molycorp Sec. Litig.*,
   2015 U.S. Dist. LEXIS 30892 (S.D.N.Y. Mar. 12, 2015) .......................................... 10

*Kalish-Jarcho, Inc. v. New York*,
   58 N.Y. 377 (1983) ....................................................................................................... 3

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................. 3, 9, 10

*Lundy v. Wells Fargo Bank N.A.*,
   2011 U.S. Dist. LEXIS 166401 (S.D.N.Y. Mar. 10, 2011) .......................................... 2

*Matter of Part 60 Put-Back Litig.*,
   36 N.Y. 3d 342 (2020) ............................................................................................. 1, 2

*McNally Wellman Co. v. N.Y. State Elec. & Gas. Corp.*,
   63 F.3d 1188 (2d Cir. 1995) ............................................................................... 3, 4, 5

*Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Cap. Holdings LLC*,
   143 A.D. 3d 1 (1st Dep't 2016) ................................................................................... 2

*Muhan Cui v. Xia*,
   2021 U.S. Dist. LEXIS 45815 (E.D.N.Y. Mar. 2, 2021) .............................................. 9

*Negrete v. Citibank, N.A.*,
   759 F. App'x 42 (2d Cir. 2019) ................................................................................... 8

*Oldendorff Carriers GmbH Co. KG v. Total Petrochemicals & Ref. USA, Inc.*,
   2014 U.S. Dist. LEXIS 162005 (S.D. Tex. Nov. 14, 2014) .................................... 6, 7

*Omegra Shipping Pte Ltd. v. World Fuel Servs. (Sing.) Pte Ltd.*,
   2022 U.S. Dist. LEXIS 147343 (S.D. Fla. Aug. 17, 2022) ........................................ 11

*President Container Grp. 11, LLC v. Systec Corp.*,
   467 F. Supp. 3d 158 (S.D.N.Y. 2020) ......................................................................... 2

*Rotterdam Ventures v. Ernst & Young LLP*,
  300 A.D.2d 963 (3d Dep't 2002) .................................................................................. 10, 11

*Sackin v. Transperfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ................................................................................. 7

*Sol Grp. Mktg. Co. v. Am. Pres. Lines, Ltd.*,
  2016 U.S. Dist. LEXIS 5445 (S.D.N.Y. Jan. 15, 2016) ...................................................... 4

*St. Clair Marine Salvage, Inc. v. M/Y Blue Marlin*,
  2014 U.S. Dist. LEXIS 75164 (E.D. Mich. June 3, 2014) .................................................. 8

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
  136 F. Supp. 2d 253 (S.D.N.Y. 2001) ................................................................................. 2

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
  524 F. Supp. 2d 302 (S.D.N.Y. 2007) ................................................................................. 2

*VL8 Pool, Inc. v. Glencore Ltd.*,
  2021 U.S. Dist. LEXIS 245803 (S.D.N.Y. Dec. 27, 2021) ........................................... 12, 13

*VL8 Pool, Inc. v. Glencore Ltd.*,
  2021 U.S. Dist. LEXIS 56968 (S.D.N.Y. Mar. 25, 2021) ................................................ 4, 5

*Wheeler v. Topps Co.*,
  2023 U.S. Dist. LEXIS 13007 (S.D.N.Y. Jan. 25, 2023) .................................................. 13

*Xerox Corp. v. Graphic Mgmt. Servs.*,
  959 F. Supp. 2d 311 (W.D.N.Y. 2013) ................................................................................ 5

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
  736 Fed. App'x 274 (2d Cir. 2018) ................................................................................. 3, 4

**Statutes**

U.C.C. § 2-719 .............................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................................... 8

**REPLY**

This case is about the sale of a product that allegedly turned out to not meet contractual specifications.  Plaintiffs fail to even acknowledge that GSPL provided plaintiffs with $2 million of replacement marine fuel, at its own expense, in fulfillment of the exclusive contractual remedy agreed by plaintiffs.[1]  Under New York law, that sole remedy clause cannot be avoided by plaintiffs' unsupported allegations of gross negligence.  Plaintiffs' remaining arguments directed at avoiding their contractual bargain are equally flawed, premised on conclusory allegations and rhetoric that do not remotely establish fraudulent or malicious conduct, or suggest the deal to which they agreed was "unconscionable."  This is dispositive of the contract claim.

Plaintiffs' remaining tort claims are either barred by the maritime economic loss rule, subject to dismissal as duplicative of the contract claim, not supported by the pleaded facts, or all three.  Plaintiffs' rights are governed by the sale contract, and they have received everything to which they are entitled.  The Amended Complaint should therefore be dismissed.

**ARGUMENT**

**I.      The Breach of Contract Claim (Count I) Should Be Dismissed**

    **A.      The Sole Remedy Provision Requires Dismissal of the Contract Claim**

Plaintiffs have no meaningful answer to GSPL's dispositive argument that the sole remedy provision in section 7(d) of the GTCs requires dismissal of Count I.  Mov. Br. at 11–12.

        **1.      The Sole Remedy Clause Cannot Be Avoided by Gross Negligence, and the Pleaded Facts Do Not Establish Fraudulent or Intentional Misconduct**

Instead, plaintiffs refer to gross negligence.  Opp. Br. at 7–9.  In so doing, plaintiffs ignore the controlling decision in *Matter of Part 60 Put-Back Litig.*, 36 N.Y. 3d 342 (2020).  The New York Court of Appeals has expressly held that the public policy invalidating limitation provisions

---

[1]   Capitalized terms have the meanings set forth in GSPL's moving brief (ECF No. 28; "Mov. Br.").

for gross negligence "applies only to exculpatory clauses or provisions that limit liability to a nominal sum" and does *not* apply to sole remedy provisions. *Id.* at 348–49. Allegations of gross negligence therefore cannot render a sole remedy clause unenforceable as a matter of law. *Id.*

Plaintiffs cite three cases that involved a sole remedy clause, and none is helpful to them. *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302 (S.D.N.Y. 2007), was decided before *Put-Back*, and is no longer good law. In *President Container Grp. 11, LLC v. Systec Corp.*, 467 F. Supp. 3d 158 (S.D.N.Y. 2020), the court *enforced* sole remedy clauses to dismiss the contract claim. *Id.* at 170. And in *Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Cap. Holdings LLC*, 143 A.D. 3d 1 (1st Dep't 2016), the court only held that gross negligence could potentially render an "illusory" sole remedy clause unenforceable. *Id.* at 9. Further, the First Department later relied on *2006-13ARX* to reach a similar conclusion in the related *Put-Back* litigation, and was reversed. *Put-Back*, 36 N.Y. 3d at 355–56. The Court held that the clause only purported "to limit, but not eliminate, the remedies available to the plaintiff." *Id.* at 348. It was therefore not "illusory" and could not be avoided due to gross negligence. *Id.* at 356–57. Here, GSPL provided plaintiffs with $2 million of replacement fuel at its own expense. The sole remedy clause is thus not "illusory." It is enforceable and requires dismissal of this claim regardless of plaintiffs' unsupported allegations of gross negligence. *Id.* at 357.[2]

---

[2] Plaintiffs' remaining cited cases do not address sole remedy clauses or controlling New York law as set forth in *Put-Back*. *See, e.g., Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 254–55 (S.D.N.Y. 2001) (clause providing for waiver of all rights and liabilities covered by property insurance); *Gentile v. Garden City Alarm Co.*, 147 A.D.2d 124, 131–32 (2d Dep't 1989) (exculpatory clause for gross negligence and limitation of liability to nominal damages of $250); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (no contractual provision at issue; addressing tort of gross negligence); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y. L.L.C.*, 405 F. Supp. 3d 408, 448–49 (W.D.N.Y. 2019) (same); *Lundy v. Wells Fargo Bank N.A.*, 2011 U.S. Dist. LEXIS 166401, at *14 (S.D.N.Y. Mar. 10, 2011) (same). They are irrelevant.

Plaintiffs also refer to their allegations of fraud (Opp. Br. at 9), but cannot establish the fraudulent, intentional or "sinister" misconduct necessary to invalidate a contractual limitation of liability. *Kalish-Jarcho, Inc. v. New York*, 58 N.Y. 377, 385 (1983). They contend, for example, that the contract's quality provisions "were fraudulent because they were present representations of fact," and GSPL, "as the seller of the bunkers, is chargeable with knowledge of the content of the product." Opp. Br. at 9–10. Plaintiffs' unsupported theory would transform every sale of non-conforming goods into an intentional fraud, regardless of the actual knowledge or intent of the seller. That is not the law. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (fraud requires knowledge of falsity and scienter). They similarly argue that GSPL "had reason to believe bunkers being supplied from Singapore" were off-specification, and this "should have caused [GSPL] . . . to at least investigate." Opp. Br. at 9–10. Such allegations suggest (at most) ordinary negligence, not knowing, intentional misconduct. Mov. Br. at 21–22.

The remainder of plaintiffs' meritless arguments are addressed in Arg. § III(B) below. The pleaded facts do not establish fraudulent intent. The sole remedy clause in section 7(d) of the GTCs therefore requires dismissal of this claim.

2. Plaintiffs Have Failed to Establish Unconscionability

Plaintiffs also argue that the sole remedy clause is "unconscionable." Opp. Br. at 11–12. Plaintiffs were required to plead facts that show the provision is "both procedurally and substantively unconscionable." *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. App'x 274, 277 (2d Cir. 2018) (quotation omitted). The pleaded facts establish neither.

Procedural unconscionability means the plaintiff lacked a "meaningful choice" in the contract formation process. *McNally Wellman Co. v. N.Y. State Elec. & Gas. Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995). Plaintiffs do not address this requirement, and cannot meet it. Plaintiffs are

experienced industry participants, negotiated the contract through a broker, and requested that the GTCs apply to this sale. Am. Compl. ¶¶ 2, 4, 11–12;[3] *McNally*, 63 F.3d at 1198 (no procedural unconscionability where sophisticated party requested the provision); *Sol Grp. Mktg. Co. v. Am. Pres. Lines, Ltd.*, 2016 U.S. Dist. LEXIS 5445, at *20 (S.D.N.Y. Jan. 15, 2016) (same based on "failure to allege procedural unconscionability and [plaintiff's] status as a sophisticated party").

Plaintiffs also offer no explanation or legal authority that suggests an agreement to replace an off-specification product is substantively unconscionable. *See Zam & Zam*, 736 Fed. App'x at 278 ("[n]owhere in the complaint does [plaintiff] plead how these . . . requirements are grossly unreasonable") (cleaned up). Nor could they. Exclusive replacement remedies are expressly authorized by U.C.C. § 2-719(1), and routinely enforced. *See* Mov. Br. at 12–13 (collecting cases).

For either of these reasons, plaintiffs' unconscionability argument should be rejected. None of plaintiffs' asserted grounds for avoiding the sole remedy clause in section 7(d) of the GTCs is valid. Section 7(d) of the GTCs therefore requires dismissal of Count I.

**B.     The Consequential Damages Bar Requires Dismissal of the Contract Claim**

Plaintiffs' remaining arguments concerning the bar on consequential damages and the $300,000 liability cap are therefore academic. Opp. Br. at 10–13. They are also without merit.

Plaintiffs posit that their claimed losses are mitigation expenses, and therefore not prohibited by the consequential damages bar in section 7(a) of the GTCs. Opp. Br. at 10. Yet plaintiffs do not dispute that the claimed losses relate to additional marine fuel for the vessel to fulfill its commercial obligations, the costs of deviation to procure that replacement fuel, and related costs. Mov. Br. at 13–14, citing Am. Compl. ¶ 26. As explained in *VL8 Pool, Inc. v.*

---

[3]     *See also* Declaration of Peter J. Behmke (ECF No. 30), Ex. A (Bunker Confirmation Note), at p. 3 ("in accordance with instructions received from purchaser vessel SERIFOS and owners/managing owners/charterers, we have nominated the following bunker stem, *in accordance with seller's current terms and conditions* . . .") (emphasis added).

4

*Glencore Ltd.*, 2021 U.S. Dist. LEXIS 56968, at *4, *10 (S.D.N.Y. Mar. 25, 2021) ("*VL8 Pool I*"), those are consequential losses. *See also* Mov. Br. at 14. Count I should therefore be dismissed.

### C. The $300,000 Liability Cap Is Enforceable

Plaintiffs do not argue that their agreement to the $300,000 liability cap was procedurally unconscionable (Opp. Br. at 11), which is dispositive of their attempt to invalidate the cap on unconscionability grounds. *See McNally*, 63 F.3d at 1198.

Their argument that the cap "fails of its essential purpose" is also flawed. Opp. Br. at 12–13. A damages cap can only be invalidated if it is unconscionable; the failure of essential purpose doctrine does not apply. *See Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F. Supp. 1495, 1509–10 (E.D.N.Y. 1984), *aff'd in part and rev'd in non-relevant part*, 786 F.2d 72 (2d Cir. 1986). Regardless, plaintiffs cannot establish that enforcement of the contract would leave them with "*no remedy at all*." *Xerox Corp. v. Graphic Mgmt. Servs.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) (emphasis original). Plaintiffs received $2 million of replacement fuel, and if any further damages are recoverable (they are not), the cap would allow up to $300,000 in additional compensation. *Id.* at 320 (buyers did "not plausibly allege that they were deprived of any remedy at all" where contract allowed replacement equipment or damages within limits).

### II. The Negligence and Strict Liability Claims (Counts II-IV) Should Be Dismissed

The negligence and strict liability claims should also be dismissed. Plaintiffs have no response to the numerous authorities that explain tort claims concerning the sale of contaminated fuel, causing only economic damages, are barred by the economic loss rule of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). Mov. Br. at 14–16 (collecting cases).

Plaintiffs also do not dispute that their losses are economic. They refer to their allegations that the vessel encountered "engine issues" (Opp. Br. at 5), but even if that qualifies as physical

damage, it "does not automatically open the door to all foreseeable economic consequences." *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 203 (5th Cir. 1995). To be recoverable, economic losses must "have some direct tie to the plaintiff's specific physical loss or damage," such as repair costs. *Id.* No such costs are sought by plaintiffs. Mov. Br. at 10–11.

Because this is fatal to their claims, plaintiffs suggest there is a broad "exception" to the economic loss rule for mitigation expenses, and vaguely refer to the possibility of "additional" damage to the engines. Opp. Br. at 15–16. However, none of the cases cited by plaintiffs allows for the recovery of their alleged economic losses.

In *Corpus Christi*, the court held that costs to flare gas were "physical damage to a proprietary interest" and recoverable because they were "directly attributable" to efforts to repair a damaged gas riser and prevent permanent physical damage to the wells. 71 F.3d at 202–3. The court further held that all other related economic losses were barred by the economic loss rule because they did not have a "direct tie" to the repairs. *Id. Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.*, 639 F. 3d 207 (5th Cir. 2011) involved costs to shut down power turbines to repair damage to the plaintiff's facility and prevent further permanent physical damage, and was decided on similar grounds. *Id.* at 213–14. In both cases, the plaintiff was allowed to recover losses for "physical damage to a proprietary interest" that were "directly attributable" to efforts to repair physical damage and prevent further physical damage. That is not this case.

This case is similar to *Oldendorff Carriers GmbH Co. KG v. Total Petrochemicals & Ref. USA, Inc.*, 2014 U.S. Dist. LEXIS 162005 (S.D. Tex. Nov. 14, 2014), where the court rejected the application of *Catalyst* to claims of a vessel owner that alleged it suspended use of off-specification fuel "to avoid damage to the vessel's main engine," and incurred costs to offload the "bad fuel" and load "additional on-specification bunkers" for the vessel's next voyage. *Id.* at *8. As in this

6

case, the plaintiff relied on *Catalyst* to argue that the economic loss rule did not bar its tort claims because it "has pleaded mitigation of additional damage to the vessel's engine." *Id.* at *9.

The court rejected the argument and dismissed the claim. The court held that the plaintiff's costs for "unloading and replacing the allegedly bad fuel" were not recoverable under *East River*, and the allegation that its "mitigation efforts were aimed [at] 'avoiding further engine stoppages . . . and to try to avoid damage to the vessel's main engine'" failed to plead a plausible case that any other costs were necessary to prevent permanent physical damage to the engine. *Id.* at *9–10.

Here, plaintiffs do not allege they incurred "physical damage to a proprietary interest" that is "directly attributable" to repairs to prevent further, permanent physical damage. *Cf. Corpus Christi*, 71 F.3d at 202. The vessel crew expended "effort" (for which no loss is claimed), and Serifos ceased using the GSPL fuel, purchased additional fuel to complete its commercial voyage, and returned to Singapore to replace the fuel. Am. Compl. ¶ 26. Plaintiffs' alleged losses are purely economic, and their allegations are identical to those that required dismissal in *Oldendorff*.

Plaintiffs' final cited case, *Sackin v. Transperfect Global, Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017) (Schofield, J.), is irrelevant. In *Sackin,* the economic loss rule did not apply because it did not involve a products liability claim, and a "legal duty independent of the contract itself [was] violated." *Id.* at 749. Courts routinely hold that the sale of contaminated marine fuel does not implicate a non-contractual duty, and plaintiffs have not identified one. Mov. Br. at 15–16 (collecting cases). *Sackin* is therefore inapposite, and these claims should be dismissed.

### III. The Fraud Claim (Count V) Should Be Dismissed

#### A. The Fraud Claim Is Duplicative of the Contract Claim

Plaintiffs concede that the alleged "fraud" concerned "the very heart of the transaction: The quality and content of the bunkers." Opp. Br. at 19. The maritime economic loss rule therefore

requires dismissal of the fraud claim as duplicative of the contract claim. Mov. Br. at 16–17 (collecting cases); *see also FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 94 (2d Cir. 2019) ("The contract's written terms . . . address the factual bases for the fraudulent misrepresentation, and the fraud claim is duplicative"); *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 48 (2d Cir. 2019).

Plaintiffs also admit that they are seeking identical damages in the fraud and contract claims, but argue that the fraud claim should be allowed so they can circumvent the contractual limitations on their alleged damages. Opp. Br. at 23–24. That is precisely what the maritime economic loss rule is intended to prevent. *See St. Clair Marine Salvage, Inc. v. M/Y Blue Marlin*, 2014 U.S. Dist. LEXIS 75164, at *21 (E.D. Mich. June 3, 2014) ("the proper remedy for these purported misrepresentations . . . rests in contract law, not that of tort"); *Am. Dredging Co. v. Plaza Petrol. Inc.*, 845 F. Supp. 91, 93 (E.D.N.Y. 1993) ("one party should not be able to circumvent an agreement by claiming a tort remedy"); *see also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002) (rejecting plaintiff's argument that "since the [contract] capped damage recoveries . . . [any] damages in excess of that difference" were recoverable in fraud).

The fraud claim should therefore be dismissed.

### B. The Pleaded Facts Fail to Establish an Intent to Defraud

The fraud claim should also be dismissed because the pleaded facts do not establish fraudulent intent as required by Fed. R. Civ. P. 9(b). Plaintiffs' response confuses the legal standard, and primarily relies on material outside the pleadings and speculation, which even taken at face value, fail to establish actual knowledge, motive or conscious recklessness.

Plaintiffs argue that the Second Circuit authorities that require dismissal of this claim are inapplicable because they are securities fraud cases. Opp. Br. at 21 & n.8. However, the pleading requirements for scienter in securities and common law fraud cases are "essentially the same."

*Muhan Cui v. Xia*, 2021 U.S. Dist. LEXIS 45815, at *20–21 & n.8 (E.D.N.Y. Mar. 2, 2021) (citation omitted). Both prohibit reliance on "speculation and conclusory allegations," and require the plaintiff to "allege *facts* that give rise to a *strong inference* of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (emphasis added) (common law fraud); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (identical standard for securities fraud).[4]

Plaintiffs contend that they have "adequately alleged both motive and opportunity" to establish scienter, yet their argument does not include a single citation to the Amended Complaint. Opp. Br. at 21–22. Instead, they offer an illogical rhetorical question and "presum[e]" that GSPL "made millions of dollars of profit" in its sales of marine fuel. *Id.* at 22. Rhetoric and speculation are not a substitute for pleaded facts, but even if that "profit motive" were pleaded, it would still fail to establish scienter. *See Hoffman v. Kashi Sales, L.L.C.*, 2022 U.S. Dist. LEXIS 229070, at *19 (S.D.N.Y. Dec. 20, 2022) ("Even if the Court inferred from this allegation that defendant possessed a general profit motive to commit fraud, 'simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.'"), quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (collecting cases).

GSPL also demonstrated that plaintiffs' allegations that GSPL "would" have detected organic chlorides if it conducted further tests in response to "indicators" of their possible presence failed to plead scienter via recklessness or conscious misbehavior. Mov. Br. at 17–18 (collecting cases). Plaintiffs do not dispute that conclusion, or cite any case in which an alleged failure to further investigate similar "indicators" established fraudulent intent.

---

[4] Even where the matter is "peculiarly within the adverse parties' knowledge" and pleaded on "information and belief," the allegations must "be accompanied by a statement of the *facts* upon which the belief is founded." *Green Star Energy Sols., LLC v. Edison Props., LLC*, 2022 U.S. Dist. LEXIS 196738, at *31 (S.D.N.Y. Oct. 28, 2022) (emphasis added).

The only other pleaded fact cited by plaintiffs is their reference to the "Houston problem" lawsuits, to argue that "Glencore has extensive prior experience with chloro-contaminants." Opp. Br. at 20. That assertion is both irrelevant to whether GSPL knew that any statements made to plaintiffs were false, and unsupported because none of the Houston problem cases involved GSPL or "chloro-contaminants." Mov. Br. at 7–8 & n.3. It does not establish scienter.

There are no other pleaded facts that even arguably speak to this issue. Plaintiffs thus vaguely refer to the "totality of circumstances," or speculate about "the number of complaints . . . that [GSPL] necessarily received," without citation to any pleaded fact. Opp. Br. at 18, 20. Plaintiffs also refer to two articles outside of the pleadings. *See* Tisdale Exs. A, B.[5] Those articles cannot be considered on this motion. *See Amron v. Yardain, Inc. Pension Plan*, 2019 U.S. Dist. LEXIS 210096, at *26, n.5 (S.D.N.Y. Dec. 5, 2019) (Schofield, J.). Regardless, the only reported facts concerning GSPL's knowledge or intent are that GSPL "carried out tests on the fuel supplied to ships prior to their sales based on [ISO 8217]," there is "no evidence that [GSPL] … had intentionally contaminated" the fuel, and GSPL received results from more sophisticated testing that indicated the presence of organic chlorides on March 21, 2022, ten days *after* the sale with plaintiffs was completed. Tisdale Ex. A ¶¶ 4–6. Thus, even if considered, the articles do not establish that GSPL knew any statements to plaintiffs were "false when made." *Lerner*, 459 F.3d at 291; *see also In re Molycorp Sec. Litig.*, 2015 U.S. Dist. LEXIS 30892, at *32–33 (S.D.N.Y. Mar. 12, 2015) ("fraud by hindsight" cannot establish scienter) (collecting cases).

Finally, plaintiffs argue the motion "must be denied" so they can conduct discovery. Opp. Br. at 21. That is not grounds to deny the motion; it is only an admission that plaintiffs cannot meet their pleading burden. *Rotterdam Ventures v. Ernst & Young LLP*, 300 A.D.2d 963, 965 (3d

---

[5] "Tisdale Ex. __" refers to exhibits to the Declaration of Thomas L. Tisdale (ECF No. 35).

10

Dep't 2002) (plaintiffs' argument that they need discovery to "ascertain what defendant knew and when defendant knew it, is a tacit acknowledgment that the complaint, on its face, is lacking in particularity on this point"). This claim should be dismissed.

## IV. The Gross Negligence Claim (Count VI) Should Be Dismissed

### A. The Gross Negligence Claim Is Barred by the Economic Loss Rule

GSPL demonstrated that the gross negligence claim is barred by the economic loss rule, on two grounds: (i) it seeks economic losses and is barred by *East River*; and (ii) it is duplicative of the contract claim. Mov. Br. at 19–20. Plaintiffs fail to respond to either argument.

Plaintiffs reference several of the authorities requiring dismissal of this claim under the economic loss rule, but do not address the relevant aspects of those decisions. Opp. Br. at 25. For example, in *AGIP Petrol. Co. v. Gulf Island Fabrication, Inc.*, 920 F. Supp. 1330 (S.D. Tex. 1996), the court held the *East River* rule barred the plaintiff's maritime gross negligence claims seeking economic damages as a matter of law. *Id.* at 1340–41. Plaintiffs point out the irrelevant facts that *AGIP* was decided on summary judgment, and that tort claims for "losses that are other than purely economic in nature" were allowed to proceed. *Id.* at 1341. Plaintiffs are not seeking non-economic damages. *AGIP* and the *East River* rule therefore require dismissal of this claim.

Plaintiffs likewise do not dispute that the gross negligence claim should be dismissed because it is duplicative of the contract claim. Mov. Br. at 19–20 (collecting authority). They ignore the authorities that require this result and fail to identify a breach of any extra-contractual legal duty or resulting loss, as required to proceed separately in tort.

Plaintiffs only argue that *Omegra Shipping Pte Ltd. v. World Fuel Servs. (Sing.) Pte Ltd.*, 2022 U.S. Dist. LEXIS 147343 (S.D. Fla. Aug. 17, 2022) and *Curacao Oil NV v. Trafigura Pte Ltd.*, 2020 N.Y. Misc. LEXIS 2902 (Sup. Ct. N.Y. Cty. Feb. 3, 2020), are distinguishable, but not

11

on any relevant grounds. Opp. Br. at 25. Those cases were cited to demonstrate that the sale of allegedly contaminated marine fuel in violation of ISO 8217 does not implicate a legal duty outside of the sale contract. Mov. Br. at 19. Plaintiffs do not dispute that conclusion or identify any extra-contractual legal duty to support this claim. Count VI should therefore be dismissed.

### B. The Pleaded Facts Do Not Establish Gross Negligence

Plaintiffs also cannot make the "compelling demonstration of egregious intentional misbehavior evincing extreme culpability" necessary for gross negligence. Mov. Br. at 20, quoting *Deutsche Lufthansa AG v. Boeing Co.*, 2007 U.S. Dist. LEXIS 9519, at *7 (S.D.N.Y. Feb. 2, 2007) (collecting authority).

Plaintiffs cite their allegations that GSPL "would" have discovered organic chlorides if it performed further tests in response to "indicators" of their possible presence, referring to the March 1, 2022, advisory that "3 bunkers" from "2 different suppliers" contained organic chlorides. Opp. Br. at 27, citing Am. Compl. ¶¶ 25, 66; Behmke Ex. G. Plaintiffs do not address the authorities cited by GSPL that explain such alleged failures to investigate potential problems after receiving notice constitute, at most, negligence. Mov. Br. at 22–23 (collecting cases). Plaintiffs also concede they do not plead *any* facts concerning GSPL's quality control process, and therefore cannot plead the requisite "extreme departure" from industry standards or failure to "exercise even slight care." Mov. Br. at 23, quoting *Howe v. Ethicon, Inc.*, 2022 U.S. Dist. LEXIS 117292, at *6, *19 (S.D.N.Y. June 27, 2022); Opp. Br. at 3 ("Plaintiffs do not presently know whether Defendant performed any such tests on the subject bunkers . . ."). That is dispositive of this claim.

Plaintiffs also do not cite any case in which the high standard for gross negligence was met on similar allegations. They attempt to distinguish *VL8 Pool, Inc. v. Glencore Ltd.,* 2021 U.S. Dist. LEXIS 245803 (S.D.N.Y. Dec. 27, 2021) ("*VL8 Pool II*"), on the basis that they plead GSPL

"received complaints from numerous other ships." Opp. Br. at 27. The *VL8 Pool II* plaintiff made the same allegation.[6] In assessing the defendant's state of mind, Judge Carter properly considered only the two customers identified in the pleadings "that reported an alleged problem with the fuel . . . *prior to the date of fuel delivery*," and held the failure to act on those reports did not establish gross negligence. 2021 U.S. Dist. LEXIS 245803, at *7 (emphasis added).

There is no substantive difference between the two reports concerning possible contamination in *VL8 Pool II* and the alert concerning "3 bunkers" relied upon by plaintiffs. Behmke Ex. G. As explained above, the two articles submitted by plaintiffs are not properly considered on this motion. Regardless, the articles state that GSPL conducted tests for compliance with the ISO 8217 standard before its sales of marine fuel to its customers, did not intentionally contaminate the fuel, and did not receive results from the more sophisticated testing indicating organic chlorides until ten days after the sale to plaintiffs. Tisdale Ex. A ¶¶ 4–6. These facts preclude any argument that GSPL acted with conscious recklessness or failed to exercise even slight care in this transaction. *VL8 Pool II*, 2021 U.S. Dist. LEXIS 245803, at *7 ("VL8 has not alleged that Glencore needed to do anything more than this initial sampling and testing on this specific batch of fuel."). For any of these reasons, the gross negligence claim should be dismissed.

V.  **The Amended Complaint Should Be Dismissed With Prejudice**

Plaintiffs have had three opportunities to plead or amend their case, and they have proffered no reason to justify a fourth. Dismissal should be with prejudice. *See Wheeler v. Topps Co.*, 2023 U.S. Dist. LEXIS 13007, at *18 (S.D.N.Y. Jan. 25, 2023) (Schofield, J.).

---

[6]  *See VL8 Pool, Inc. v. Glencore Ltd.*, No. 1:20-cv-2053-ALC (S.D.N.Y. Apr. 8, 2021), ECF No. 21, Am. Compl. ¶¶ 19–20, 23 ("[n]umerous other fuel purchasers and vessels consuming [marine fuel] sold by Glencore during the relevant time period have suffered similar physical damages" and "despite having actual knowledge that the marine fuel product . . . was defective, off-spec, and dangerous for vessel users, continued to sell the marine fuel").

13

**CONCLUSION**

The Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
March 17, 2023

Respectfully submitted,

HERBERT SMITH FREEHILLS
  NEW YORK LLP

By:   */s/ Peter J. Behmke*
    Peter J. Behmke
    Michael P. Jones
    Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601
Email: Peter.Behmke@hsf.com
       Michael.Jones@hsf.com
       Barron.Flood@hsf.com

*Attorneys for Glencore Singapore Pte Ltd.*