UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                     :

SERIFOS MARITIME CORP., et al.,      :

                        Plaintiffs,   :

                                       :          22 Civ. 8012 (LGS)

           -against-             :

                                       :          **OPINION AND ORDER**

GLENCORE SINGAPORE PTE LTD,    :

                          Defendant.  :
----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Serifos Maritime Corporation ("Serifos") and Andros Maritime Agencies Ltd. ("Andros") filed an amended complaint on December 23, 2022, the operative complaint (the "Complaint"). The Complaint asserts claims for breach of contract, ordinary and gross negligence, strict products liability and intentional misrepresentation. Defendant Glencore Singapore Pte Ltd. ("Defendant" or "Glencore") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint. For the following reasons, Defendant's motion is granted in part and denied in part.

## I.     BACKGROUND

The following facts are taken from the Complaint. *See Dixon v. von Blanckensee*, 994 F.3d 95, 101-02 (2d Cir. 2021). The Complaint's allegations are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiffs as the non-moving party. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

Plaintiff Serifos is an entity organized under Liberian law and is the registered owner of the M/T SERIFOS (the "Vessel"), a large crude oil carrier. Plaintiff Andros is an entity organized under foreign law with its principal place of business in London. Andros is the London agent for the Vessel's technical and commercial manager. Defendant is an entity

organized under foreign law and a supplier of fuel, called "bunker fuel" or "bunkers," to oceangoing vessels.  Defendant has an office in Singapore.

On March 10, 2022, Plaintiffs, through a bunker broker, ordered a quantity of bunker fuel to be supplied -- "stemmed," in maritime parlance -- to the Vessel in Singapore.  Plaintiffs accepted Defendant's General Terms and Conditions ("GTC"), as evidenced by the venue allegations in the Complaint.  The bunker broker issued a confirmation that the stem would conform to agreed standards established by the International Standards Organization ("ISO") and the International Convention for the Prevention of Pollution from Ships ("MARPOL").  The ISO requires bunker suppliers to have quality assurance procedures in place to ensure compliance with ISO specifications.  Defendant confirmed these terms, and the stem commenced on March 11, 2022.

During the stem, drip samples of the bunker fuel were collected.  Plaintiffs sent a sample to a laboratory for testing to ensure compliance with ISO specifications.  After the stem, Defendant issued a bunker delivery note confirming the quantity of bunker fuel and its compliance with MARPOL standards.  The Vessel commenced a voyage from Singapore to Gabon.  On March 20, 2022, the laboratory analysis showed that the bunker fuel contained "elevated levels of chloro-contaminates."  Further analysis confirmed this contamination, which posed a risk of mechanical failure to the Vessel's engines.  The presence of these contaminants made the bunker fuel non-compliant with ISO and MARPOL requirements.  The Vessel consumed some of the bunker fuel provided by Defendant and "encountered significant main and auxiliary engine issues requiring extraordinary effort from the ship's crew to avoid catastrophe."  The Vessel made multiple diversions to various ports where it could load bunker fuel that was safe to consume on the voyage to Gabon.  After completing the voyage to Gabon, the Vessel

returned to Singapore, where Glencore removed the remaining bunker fuel it had supplied and replaced it.

The Complaint alleges that Defendant was aware of the presence of the contaminants before the stem of the Vessel, based on complaints Defendant had received from other vessels. Numerous laboratories had also issued advisory notices about dangerously high levels of contaminants in fuel provided by Defendant.  Despite this alleged knowledge of contamination, Defendant did not discontinue sale of the bunker fuel or advise customers that the bunker fuel was potentially hazardous.  The Complaint alleges that Defendant intentionally misrepresented the compliance of its bunker fuel with ISO and MARPOL requirements to customers, including Plaintiffs.

## II.  STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Blanckensee*, 994 F.3d at 101 (2d Cir. 2021).[1]  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is not enough for a Plaintiffs to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

*Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, plaintiffs "must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).  In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" as well as documents that are "integral to the complaint."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  On a claim for breach of contract, the contract is integral to complaint.  *See von Blanckensee*, 994 F.3d at 102 n.5.

## III.    DISCUSSION

Jurisdiction in this matter is pursuant to the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333.  It is "a fundamental feature of admiralty law, that federal admiralty courts sometimes do apply state law."  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546 (1995); *accord Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 315-16 (1955) (holding that in absence of admiralty rule created by Congress or federal courts, state law governs).  The parties agree that in the absence of federal maritime law, this case is governed by New York law.  Where the parties' briefs assume that a particular state's law controls, "such implied consent is . . . sufficient to establish the applicable choice of law."  *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

### A.  Breach of Contract (Count I)

Defendant's motion to dismiss the Complaint's breach of contract claim is granted in part.  The motion is denied to the extent the breach of contract claim seeks damages for

4

removing and replacing the off-specification fuel.  The motion is granted to the extent the breach of contract claim seeks any other damages.

Contractual damages are subject to three limitations of liability contained in the GTC. Defendant is liable only for removing and replacing off-specification fuel, up to a cap of $300,000, and has no liability for consequential or any other damages.  Section 7(a) of the GTC states that "[Glencore's] obligations and liabilities hereunder shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery vessels or to their engines or tanks, and any actual or prospective loss of profits."  Section 7(a) further provides that Glencore's "maximum liability under this Contract shall not exceed" $300,000.  Section 7(d), which addresses off-specification fuel, states that "[s]ubject to and not to exceed the maximum liability of $300,000 . . . [Glencore] will be responsible ONLY for direct expenses incurred for removal and replacement of Marine Fuels."

The damages sought on the breach of contract claim are subject to these limitations.  The claim as pleaded seeks unspecified damages, but the Complaint references Serifos's March 30, 2022, notice of claim, which describes as damages "the cost of replacing the off-spec bunkers, . . . deviation expenses, additional crew overtime, potential consumption of more expensive fuels, etc."  Except for the cost of replacing the fuel up to a limit of $300,000, the remaining damages are consequential damages and barred by the contractual limitations.  *See Keystone Foods Holdings Ltd. v. Tyson Foods, Inc.*, No. 22-1113-CV, 2023 WL 3477157, at *1 (2d Cir. May 16, 2023) (summary order) (New York law) (describing consequential damages as those that "seek to compensate a plaintiff for losses other than the value of the promised performance that are incurred as a result of the defendant's breach").  It appears that recoverable damages -- the cost of removing and replacing off-specification fuel -- are de minimis as the

Complaint alleges that Glencore removed and replaced all but 62.14 mt of the 3,760.48 mt of fuel Glencore supplied.

Under New York law, contractual clauses limiting liability are generally enforceable against the non-breaching party. *See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) ("A limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor."); *accord Yuille v. Uphold HQ Inc.*, No. 22 Civ. 7453, 2023 WL 5206888, at *17 (S.D.N.Y. Aug. 11, 2023). Contracts of adhesion or those deemed unconscionable may invalidate a limitation-of-liability provision. *See Metro. Life Ins.*, 84 N.Y. 2d at 436; *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 822 (2014) (Read, J., dissenting) ("[I]f contracting parties agree to a limitation-of-liability provision, it will be enforced unless unconscionable, even if it leaves a non-breaching party without a remedy."). A court will also decline to enforce a limitation on liability as against public policy when

> in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385 (1983); *accord Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 352 (2020). None of these exceptions to the general rule that limitations on liability will be enforced is applicable here.

The liability limitations in the GTC are not unconscionable. An unconscionable contract is "one which is so grossly unreasonable as to be unenforceable according to its literal terms because of an absence of meaningful choice on the part of one of the parties [procedural

unconscionability] together with contract terms which are unreasonably favorable to the other party [substantive unconscionability]." *In re Lawrence*, 24 N.Y.3d 320, 337 (2014) (brackets in original; other brackets omitted). The Complaint does not allege, and Plaintiffs do not argue, that it "lack[ed] meaningful choice" in the contract formation process, a necessary predicate for a finding of procedural unconscionability. *See id.* That deficiency alone is enough to reject Plaintiffs' unconscionability argument. *See id.*; *accord Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (New York law).

The Complaint also fails to plead facts showing substantive unconscionability. A substantively unconscionable contract is one that is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988); *accord Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) (New York law). Plaintiffs offer no legal authority to suggest that a contractual limitation on liability is "grossly unreasonable or unconscionable in the light of the mores and business practices" relevant here. Defendant's replacement of defective bunkers further belies Plaintiffs' contention that the substance of the GTC is unconscionable.

The Complaint does not plead behavior by Defendant to suggest a "reckless indifference to the rights of others" that would invalidate the limitations on liability. *See Kalisch-Jaricho, Inc.*, 58 N.Y.2d at 385. Nor does the Complaint adequately allege fraud on Defendant's part, as the Complaint's intentional misrepresentation claim is duplicative of its breach-of-contract claim. These deficiencies are addressed in greater detail below, granting Defendant's motion to dismiss the fraud and gross negligence claims.

The only recoverable contract damages are those for removal and replacement of non-specification fuel.

**B.  Negligence and Strict Liability Claims (Counts II, III and IV)**

Defendant's motion to dismiss the claims for negligence and strict liability is granted. Pursuant to those theories of liability, Plaintiffs seek to recover mitigation expenses Plaintiffs incurred in preventing "catastrophic harm" to the Vessel.  Those damages are economic losses barred by the economic loss rule.  "[W]hether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 876 (1986); *accord Am. Petrol. & Transp., Inc. v. City of New York*, 737 F.3d 185, 196 (2d Cir. 2013) ("[E]conomic losses are not recoverable for an unintentional maritime tort in the absence of physical injury."); *Bouchard Transp. Co. v. Long Island Lighting Co.*, 807 F. App'x 40, 42 (2d Cir. 2020) (summary order) (same); *see also* 2 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 14:8 (6th ed. 2022) ("As a federal common law limit on maritime tort recovery, the rule applies even to damages that pass the test of foreseeability.").  The Complaint does not allege physical damage to Plaintiffs' property.  While the Complaint repeatedly avers that contaminated fuel *could* severely damage a vessel's engines or scrubber systems, it does not allege actual damage to the Vessel.  The allegation that the Vessel "encountered significant main and auxiliary engine issues" does not, by itself, amount to a claim of physical injury to those engines.

Plaintiffs rely on Fifth Circuit precedent for the argument that an exception to the economic loss rule exists for acts taken to mitigate physical damage.  However, Plaintiffs cite no caselaw to suggest that the Second Circuit recognizes this exception.  To the contrary, in *American Petroleum*, the Second Circuit declined to adopt a fact-specific exception to the

8

economic-loss rule based on the foreseeability of the loss. *Am. Petrol.*, 737 F.3d at 196-97. The Second Circuit observed, "In weighing the case for exceptions to the general rule, the benefits of its certainty, the customary use of first-party insurance to mitigate or eliminate its effects, and its long recognized establishment within maritime jurisprudence weigh heavily." *Id.* at 197. The same considerations weigh heavily against recognizing any exception here.

Finally, Plaintiffs' reliance on this Court's decision in *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017), is inapposite and in any event, not binding. First, *Sackin* was not a maritime case. Courts in the Second Circuit have largely treated the economic loss rule as a bright-line rule in the maritime context. *See Am. Petrol.*, 737 F.3d at 195 (collecting cases); *id.* at 197 (acknowledging the rule's "long recognized establishment within maritime jurisprudence"). Second, *Sackin* determined that, despite the economic loss rule, a negligence claim "may be brought provided that the plaintiff alleges that a legal duty independent of the contract itself has been violated." 278 F. Supp. 3d at 749. The Complaint offers no basis to infer an independent duty owed to Plaintiffs by Defendant beyond that which arose from the GTC. The Complaint's negligence and strict liability claims are dismissed.

**C. Intentional Misrepresentation and Gross Negligence (Counts V and VI)**

Defendant's motion to dismiss the intentional misrepresentation (fraud) and gross negligence claims is granted because those claims are duplicative of the breach-of-contract claim. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (2018); *accord FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 93-94 (2d Cir. 2019) (summary order) ("Under New York law . . . a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.").

9

New York recognizes three exceptions to the rule against duplicative claims:

> [W]here a claim for fraud is based on facts underlying breach of contract, the plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Negrete v. Citibank, N.A.*, 759 F. App'x 42, 48 (2d Cir. 2019) (summary order) (New York law) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).  But "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Dormitory Auth.* 30 N.Y.3d at 711.

None of the three exceptions applies here because the tort claims are essentially a repackaging of the contract claim.  First, as noted above, the Complaint offers no basis to infer an independent duty owed to Plaintiffs by Defendant beyond that which arose from the GTC. Second, the Complaint alleges no "fraudulent misrepresentation collateral or extraneous to the contract." *See Negrete*, 759 F. App'x at 48.  Third, the Complaint seeks no "special damages." To prevail under this exception, a Plaintiff must "show some loss independent of the damages allegedly incurred for breach of contract." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, No. 22 Civ. 1105, 2023 WL 2751049, at *24 (S.D.N.Y. Mar. 31, 2023) (finding as a factual matter that the RICO fraud claim was not duplicative of the contract claim); *accord Church of S. India Malayalam Congregation of Greater N.Y. v. Bryant Installations, Inc.*, 925 N.Y.S.2d 131, 132 (2d Dept. 2011) (affirming dismissal of fraud claim where "the alleged misrepresentations did not result in any loss independent of the damages allegedly incurred for breach of contract").  Put differently, "where the damages alleged were clearly within the contemplation of the written agreement . . . merely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of

contract into a tort claim." *Dormitory Auth.* 30 N.Y.3d at 711.  The Complaint does not seek any

damages attributable to Defendant's alleged fraud that are not also attributable to Defendant's

alleged breach of contract.  As with the breach of contract claim, the gross negligence and

intentional misrepresentation claims only vaguely demand "damages in an amount to be

determined."  But Plaintiffs' formal notice of claim -- presented to Glencore on March 30, 2022,

and referenced in the Complaint -- elaborates that damages include "the cost of replacing the off-

spec bunkers, . . . deviation expenses, additional crew overtime, potential consumption of more

expensive fuels, etc."  These direct replacement damages and other consequential damages are

"clearly within the contemplation of the written agreement," even though the latter are expressly

excluded.  *See id.*  To recognize an exception to the no-duplicate-claim rule here, would mean

that a party's bargained for limitation on contractual damages could never be enforced because

the barred contract claim could always be repackaged as a tort claim.

Each cause of action in the Complaint essentially seeks damages from Defendant's

failure to perform on its contractual bargain to sell uncontaminated fuel.  Because the

Complaint's tort claims for fraud and negligence are a repackaging of the same facts and claims

that arise from the contract itself, these claims are dismissed.

Plaintiffs' argument that gross negligence claims "are generally not subject to

adjudication by a motion to dismiss" does not compel a different result.  Whether a gross

negligence claim survives a motion to dismiss depends on the sufficiency of the allegations in a

particular case.  In *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt.*, 692 F.3d 42 (2d

Cir. 2012), the Second Circuit concluded that the complaint in that case had made specific

allegations sufficient to sustain the gross negligence claim.  692 F.3d at 61-65.  The holdings of

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*, 405 F. Supp. 3d 408 (W.D.N.Y.

11

2019), and *Lundy v. Wells Fargo Bank, N.A.*, No. 8 Civ. 8715, 2011 WL 13128267 (S.D.N.Y.

Mar. 10, 2011), are similarly based on an evaluation of the allegations in those specific

complaints.  Any general observation that gross negligence claims may be especially hardy on a

motion to dismiss has little application where, as here, the claim is deficient primarily because of

a legal principle forbidding duplicate claims.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED in

part and DENIED in part.  For clarity, the breach of contract claim survives, subject to the

damages cap of $300,000, and the tort claims are dismissed.

Dated:  September 28, 2023
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

12